**George BADILLO, Plaintiff,**

v.

**CENTRAL STEEL & WIRE COMPANY, Defendant.**

**No. 79 C 2122.**

United States District Court, N. D. Illinois, E. D.

Aug. 25, 1980.

Irving M. Friedman, Michael B. Erp, Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff.

Van H. Viot, George P. Blake, Marian Haney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## OPINION AND ORDER

SHADUR, District Judge.

Defendant Central Steel & Wire Co. ("Central") has moved in the alternative to dismiss the Amended Complaint[1] filed by plaintiff George Badillo ("Badillo") or to strike various of the Amended Complaint's allegations. For the reasons stated in this opinion and order, Central's motion is granted in part and denied in part.

### Facts

In January 1977 Badillo filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") claiming that his discharge by Central had been unlawfully based on Badillo's national origin. On March 17, 1979 Badillo received a Notice of Right to Sue from the EEOC. Badillo filed the initial complaint in this case pro se on May 23, 1979,[2] Paragraph A

of which charged the following discriminatory acts by Central:

> (b) Defendant terminated plaintiff's employment because of plaintiff's race . . . [and] national origin. . .

> (d) Because of plaintiff's race . . . [and] national origin, defendant committed the following act or acts against plaintiff: The Employer's agents intimidated me and other workers on the basis of our race and/or national origin. The employer engaged in discriminatory hiring practices.

That complaint was not served on Central because Badillo failed to file the form that initiates service of process.

At a September 25, 1979 status hearing initiated by Judge Marshall (counsel having appeared for Badillo on that date), leave was granted to file an Amended Complaint. That Amended Complaint was filed October 9, 1979 and served on Central October 12, 1979.[3] It expands the allegations of the original complaint materially:

> 1. It contains, as the original complaint did not, specific class allegations under Fed.R.Civ.P. 23(b)(2) (though Paragraph 9 of the original complaint had included the reference to "other workers" quoted above). Moreover the Amended Complaint defined the purported class (as the original complaint did not) as "all blacks, females and persons discriminated against because of their national origin who have been or will be employed by Central Steel, and who have been, are being, or as a result of the operation of current policies will be discriminat-

---

**1.** In fact Central's motion to dismiss does not extend to Badillo's individual allegations under Count II that charge Central with discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Thus if *all* of Central's arguments were sustained, Count II of the Amended Complaint would still survive to that extent.

**2.** There is therefore no question but that Badillo complied with the requirement of EEOC filing (a jurisdictional prerequisite to suit under 42 U.S.C. § 2000e–5(e)) or that the initial com-

plaint was *filed* within the jurisdictional ninety–day period (42 U.S.C. § 2000e–5(f)) after the EEOC right–to–sue letter.

**3.** If the critical date for purposes of Central's motion were any of September 25, October 9 or October 12, 1979, Badillo would unquestionably have *failed* to satisfy the ninety–day jurisdictional requirement following the EEOC right–to–sue letter.

ed against in terms and conditions of employment, such as hiring, training, placement, assignments, promotion, transfer, termination, layoff, and discipline, because of their national origin, race, or sex."

2. Count I charges various discriminatory policies and practices against class members generally and Badillo individually in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

3. Count II charges that the allegedly discriminatory policies and practices have violated the rights of "Badillo and other black[4] and national origin members of the class" under 42 U.S.C. § 1981.

4. Count III charges that various policies and practices, allegedly discriminatory against *female* members of the class, have violated the rights of such female class members under Title VII and the rights of Badillo personally by depriving him of a non–discriminatory place of employment.

*Jurisdictional Limitations as to Badillo's Individual Claims*

As already implied by footnote 1, Badillo's Section 1981 claims under Count II do not involve any procedural prerequisite comparable to the ninety–day jurisdictional condition that attaches to Title VII claims. Instead the appropriate Illinois statute of limitations applies (and is not in question in this case).

As for Badillo's Title VII claims, however, the answer to the critical ninety–day jurisdictional question depends on the effect of Badillo's original complaint: If Badillo is relegated to any of the relevant dates (see footnote 3) under the Amended Complaint, this suit is untimely. In turn, that issue depends on the interaction or lack of interaction of Fed.R.Civ.P. 3 and 4(a) for limitation purposes.[5]

Rule 3 states without qualification:

A civil action is commenced by filing a complaint with the Court.

Nonetheless several courts have held that it must be read in conjunction with Rule 4(a), so that the statute of limitations is not tolled unless the summons is properly issued and placed for service (as was not done by Badillo here). See, e. g., 2 Moore's Federal Practice ¶ 3.07[4.–3–2] at 3–117 and 118 and cases there cited.

But that result is clearly the product of judicial legislation, and it poses the problems that judicial legislation always presents. When the Federal Rules of Civil Procedure were first considered for adoption in 1936, the original Advisory Committee considered two alternatives, one of which would have provided that an action would be commenced by the *service of process* and the other of which would have equated the commencement of an action with the *filing of the complaint*, with a further provision that the action would abate unless service was made within sixty days.[6] *Neither* of those alternatives was adopted; instead Rule 3 has adopted the second alternative but specifically deleted the provision requiring prompt service of process.

That deletion must be given significance in construing Rule 3 (Central's argument, by reading Rule 4(a) back into Rule 3, would effectively construe Rule 3 as if the

---

4. Badillo is not himself black.

5. Although the parties have made counter–arguments regarding the "relation back" provisions of Fed.R.Civ.P. 15(c), that Rule needs no extended review here. If Central's argument hereafter discussed in the text of this opinion is valid, Badillo's suit on the *original* complaint would be barred by limitations because of his failure to serve Central promptly. If however that argument does not prevail, the first sentence of Rule 15(c) clearly causes Badillo's individual Amended Complaint (leaving aside the class allegations, dealt with later in this opinion) to relate back to the original complaint's filing date, and the Amended Complaint is therefore timely. Central's attempt to rely on the *second* sentence of Rule 15(c) is ill-considered. The amendment contained in the Amended Complaint was plainly not one "changing the party [Central] against whom a claim is asserted [by the original complaint]."

6. May 1936 Preliminary Draft, pp. 3–4.

deletion had not taken place). Indeed the structure of the Federal Rules may be contrasted with the Illinois situation, applied by our Court of Appeals in *Dewey v. Farchone*, 460 F.2d 1338 (7th Cir. 1972). In that diversity case, a statute of limitations question was decided in light of Illinois Supreme Court Rule 103(b), which specifically (like the originally proposed Fed.R. Civ.P. 3, but unlike Rule 3 as actually adopted) provides for dismissal of an action if the plaintiff fails to exercise reasonable diligence to obtain service.

■ Statutes of limitations are of course statutes of repose, intended to provide defendants with the certainty that they will not be confronted with claims once the specified date has passed. But that purpose of certainty would not be fully served by the rule for which Central contends. Under such a rule, a suit would still be timely if *filed* within the limitation period (a date certain) even though process was *served* within some undefined period thereafter (sufficient to satisfy the requirement of due diligence).

It may well be argued that the goal of certainty cuts against Central's position. Under a literal reading of Rule 3, at least the plaintiff has the certainty of knowing that a complaint filed within the statute of limitations is timely, though the unserved and unknowing defendant has no such certainty. By way of contrast, under Central's non–literal reading of Rule 3, *both* the plaintiff and defendant are subject to un-

certainty because of the variable concept of due diligence.

It should be observed that defendants are not without remedy against abuse in this area. They may invoke the dismissal–for–want–of–prosecution provisions of Fed.R. Civ.P. 41(b), and principles of estoppel or other equitable doctrines would protect them against demonstrable prejudice.[7] There is however no showing in this case that the time interval between June 15, 1979 (when the ninety–day period after the right–to–sue letter expired) and October 12, 1979 (when Central first learned of the suit) created any greater inability on Central's part to defend against this suit on the merits.[8]

■ More than forty years have passed under the Federal Rules, but the Supreme Court has not had occasion to resolve the issue presented here.[9] Absent controlling precedent from our own Court of Appeals, this Court is disinclined to engage in judicial legislation by reinserting the requirement of due diligence into Rule 3. Instead this Court adheres to the strict construction of Rule 3 adopted by the Eighth Circuit in *Moore Co. v. Sid Richardson Carbon & Gasoline Co.*, 347 F.2d 921, 925 (8th Cir. 1965), cert. denied 383 U.S. 925, 86 S.Ct. 927, 15 L.Ed.2d 845 (1966):

> No reasonable basis exists for engrafting upon the rule or statute a condition that summons be served with diligence. If Congress or the rule makers had intended to impose such condition, it would have

---

7. For purposes of this case we need not consider the validity, under this analysis, of a holding that where plaintiff is presently prosecuting a claim with reasonable diligence, the action cannot be dismissed simply because at some earlier time plaintiff failed to act with diligence. See, e. g., *United States v. Myers*, 38 F.R.D. 194, 197 (D.D.C.1964).

8. No case adopting Central's argument as to Rules 3 and 4(a) has dismissed a complaint for lack of due diligence where the time gap was as short as in this case. In fact, in *Ingram v. Kumar*, 585 F.2d 566 (2d Cir. 1978), the Court of Appeals for the Second Circuit said that if a plaintiff had correctly named the defendant in a suit filed within the statute of limitations and then delayed service for four months after the limitations period expired, Fed.R.Civ.P. 4(a)

would have been complied with and the action would have been timely commenced in all events. Such a holding would directly cover Badillo, even if we were to accept Central's other arguments.

9. At the end of its last term the Supreme Court, in *Walker* v. *Armco Steel Corp.*, —— U.S. ——, 100 S.Ct. 1978, n. 11, 64 L.Ed.2d 659 (1980), referred to its suggestion in *Ragau* v. *Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), that Fed.R. Civ.P. 3 meant that *filing a complaint follows the applicable statute of limitations* in suits to enforce federal statutory rights. However, the Court specifically stated that it was not addressing that issue to *Walker*.

been a simple matter to include the condition by appropriate language in the rule or the statute. As heretofore pointed out, the Rules Committee deliberately chose not to impose any such condition. Accordingly Central's motion to dismiss Badillo's Title VII claim for failure to meet the 90–day jurisdictional requirement is denied.

### *Jurisdictional Limitations as to Badillo's Title VII Class Allegations*

As footnote 5 of this opinion indicates, the second sentence of Fed.R.Civ.P. 15(c) is not a proper ground for dismissal based on the identity of the *defendant* in the Amended Complaint (Central having been the named defendant from the inception). But the approach manifested by that provision clearly does bear on the propriety of adding Title VII *plaintiffs* after the ninety–day jurisdictional period had elapsed. As the Supreme Court stated in *American Pipe & Construction v. Utah*, 414 U.S. 538, 554–55, 94 S.Ct. 756, 766–767, 38 L.Ed.2d 713 (1974):

> The policies of ensuring essential fairness to defendants [with respect to the statute of limitations] . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

Accord as to adding class allegations for the first time after the statute of limitations has run, *Arneil v. Ramsey*, 550 F.2d 774,

782–83 (2d Cir. 1977); *Perry v. Beneficial Finance Co.*, 81 F.R.D. 490, 495 (W.D.N.Y. 1979).[10]

■ Under the analysis contained in the prior section of this opinion, Badillo's filing of his original complaint within the ninety-day period satisfied the general jurisdictional requirement for Title VII claims. Rule 15(c)'s first sentence, however, teaches that the Amended Complaint has the benefit of that date only to the extent that its claims "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." That is plainly not the case as to the class discrimination allegations of Count III relating to women, and Central's motion to strike such allegations is granted.

As for the allegations of discrimination against Blacks, it would appear to involve considerable stretching to read Paragraph 9(d) of the original complaint, which referred to intimidation of "me and other workers on the basis of our race and/or national origin," to encompass Blacks (the overall thrust of that paragraph plainly speaks in terms of *plaintiff's* race and national origin). That question need not be decided, however, in view of the standing discussion in the next section of this opinion.

■ Finally, as to other persons who *would* fall within the race and national origin class of which Badillo is a member, the question is whether the original complaint can fairly be read as having asserted a claim on behalf of that class of plaintiffs. Although the original complaint did not contain the same well–drafted Rule 23 allegations as the Amended Complaint, it clearly did assert discrimination against persons other than Badillo ("me and other workers") on the basis of their race and national origin. Accordingly Central's motion to strike such class allegations in the Amended Complaint is denied.

---

**10.** This Court is mindful of the less strict rule recently applied by Judge Marovitz in *Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687 (N.D. Ill.1980), which counsel for Central has been good enough to call to this Court's attention.

It is not however necessary to express an opinion as to whether facts other than those presented by this case, such as the facts considered by Judge Marovitz, should lead to a result different from that reached here.

*Sustainability of Title VII Class
Allegations on other Grounds*

Title VII's requirement of an EEOC filing before suit is brought serves a useful purpose. That purpose, however, would be disserved if the scope of the subsequent lawsuit were not directly linked to the scope of the complainant's charge to the EEOC—or, because such charges are often filed by unsophisticated persons, at least linked to the scope of the EEOC investigation stemming from that charge. Here Badillo's EEOC charge was based on the alleged national–origin reason for his discharge. EEOC's investigation and right–to–sue letter expanded the inquiry to Central's hiring policies as to Blacks and Spanish–surnamed persons and its discharge policies as to Spanish–surnamed persons.

■ That does not end the inquiry, however. Merely because an individual complaint has triggered a broader discrimination investigation, the complainant is not thereby entitled to assert the rights of others—of a group to which the complainant does not belong—that the EEOC's investigation indicates have also been discriminated against.

That problem is not simply one of class certification, as Badillo contends. It goes to the heart of this Court's basic Article III jurisdiction on "case and controversy" grounds, often characterized in terms of "standing." As the Supreme Court stated in *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975):

> [T]he standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-

court jurisdiction and to justify exercise of the court's remedial powers on his behalf. . . . The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action . . . ."

■ In a major sense the so–called typicality requirement of Fed.R.Civ.P. 23(a)(3) and the so–called adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4) are facets of the standing question.[11] But the fact that lack of standing is a jurisdictional defect under Article III militates against deferring the Court's determination on that score to a later submission on class certification, at least where the standing issues are squarely presented on the face of the complaint.

■ This Court agrees with Central's position that Badillo lacks standing to assert claims based on allegedly discriminatory practices against women [12] and Blacks [13] (save only the argument that he personally was deprived of a discrimination–free working environment, as alleged under Paragraph 15 of the Amended Complaint with respect to discrimination against women).[14] Having been hired by Central, Badillo likewise lacks standing to sue to protect the rights of others allegedly discriminated against by Central's *non* hiring on racial grounds. And the same is true as to any other allegedly discriminatory practices by Central that might exist [15] and might have

---

11. See the recent analysis by our Court of Appeals of the class action requirements of Rule 23(a), *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir. 1980), including its quotation from *Schlesinger v. Reservists Committee To Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974):

"[Plaintiff] must possess the same interest and suffer the same injury shared by all members of the class he represents."

12. See, e. g., *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1187 (E.D.N.Y.1979).

13. See, e. g., *Ripp v. Dobbs Houses, Inc.,* 366 F.Supp. 205, 209–10 (N.D.Ala.1973).

14. See, e. g., *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209–10, 93 S.Ct. 364, 366–367, 34 L.Ed.2d 415 (1972).

15. This Court should not of course be understood as implying any conclusion in that respect. Its statement is made *arguendo.*

affected other employees or prospective employees, but that plainly have not impacted Badillo or members of his class directly.

Accordingly this Court grants Central's motion based on standing considerations to the extent indicated by this section of this opinion.

### Conclusion

As a result of this opinion the surviving allegations of the Amended Complaint take on a patchwork quality. To enable defendant to file an appropriate responsive pleading (and not because the entire Amended Complaint is faulty), the Court deems the most appropriate order to be one striking the Amended Complaint, granting Badillo leave to file a Second Amended Complaint conforming to this opinion within 21 days and granting Central the right to file its answer within 21 days thereafter. That order is hereby entered.