·George BADILLO, Plaintiff,

v.

**CENTRAL STEEL & WIRE COMPANY, Defendant.**

**No. 79 C 2122.**

United States District Court, N. D. Illinois, E. D.

Feb. 3, 1981.

Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff.

Marian C. Haney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiff George Badillo ("Badillo") has filed his Second Amended Complaint against Central Steel & Wire Co. ("Central") in response to this Court's August 25, 1980 Opinion and Order (the "Opinion"). Central has again moved to dismiss or alternatively to strike certain allegations from the Second Amended Complaint. For the reasons stated in this Memorandum Opinion and Order, Central's motion is granted to a limited extent and denied in principal part.

### Facts

In January 1977 Badillo filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") claiming that his discharge by Central had been unlawfully based on Badillo's national origin. On March 17, 1979 Badillo received a Notice of Right to Sue from the EEOC.

Badillo filed the initial complaint in this case pro se on May 23, 1979, complying with both the jurisdictional prerequisite of EEOC filing and the jurisdictional time requirement for filing after the EEOC had issued its right-to-sue letter.

Both in the original Amended Complaint, filed after counsel appeared for Badillo, and in the Second Amended Complaint, broad class allegations have been included with Badillo's individual charges. Central's current attack is leveled against the entire Second Amended Complaint and alternatively against both Badillo's individual allegations and the class allegations.

### Rule 8(a)(2)

Little time need be spent on Central's argument that the entire Second Amended Complaint should be dismissed under Fed.R. Civ.P. ("Rule") 8(a)(2). It seeks to avoid the teachings of Conley v. Gibson, 355 U.S. 41, 45–46, 47, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) by distinguishing the facts in that case. That is somewhat comparable (though the parallel is obviously inexact) to arguing in a diversity case that state law should not control because Erie v. Tompkins was distinguishable—because Erie, unlike the later case, involved a plaintiff who had been walking down the tracks of the Erie Railroad when injured.

There is no question that the exceedingly low pleading threshold established by Conley v. Gibson is all-pervasive in federal procedure. All that is needed is to look at the Appendix of Forms following and comprising part of the Rules, and for example at the more recent Supreme Court pronouncement in Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ Central's position must be rejected out of hand, as this Court did impliedly in the Opinion as to the first Amended Complaint, 495 F.Supp. 299. And particularly given the fact that Central has experienced and knowledgeable counsel, this case would be a good candidate for the imposition of attorney's fees under 28 U.S.C. § 1927 (as amended in September 1980) but for the

fact that their other arguments are clearly deserving of serious attention.

### Badillo's Claim Under the Civil Rights Act of 1870

Central urges that Badillo, whose complaint identifies himself as a "Spanish-surnamed individual and ... an applicant for U.S. citizenship" and alleges discrimination "because of ... national origin and/or race," cannot invoke 42 U.S.C. § 1981 ("Section 1981") of the Civil Rights Act of 1870. Badillo counters that persons of Hispanic ancestry or ethnic background, as well as Blacks, come within the protective mantle of Section 1981.

■ On that score this Court finds it necessary to do no more (as fellow Judges in this District Court have done) than quote from Budinsky v. Corning Glass Works, 425 F.Supp. 786, 788 (W.D.Pa.1977):

The terms "race" and "racial discrimination" may be of such doubtful sociological validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly-accepted, albeit sometimes vague, understanding. Those courts which have extended the coverage of § 1981 have done so on a realistic basis, within the framework of this common meaning and understanding. On this admittedly unscientific basis, whites are plainly a "race" susceptible to "racial discrimination;" Hispanic persons and Indians, like blacks, have been traditional victims of group discrimination, and, however inaccurately or stupidly, are frequently and even commonly subject to a "racial" identification as "non-whites." There is accordingly both a practical need and a logical reason to extend § 1981's proscription against exclusively "racial" employment discrimination to these groups of potential discriminatees.

See also Aponte v. National Steel Service Center, 500 F.Supp. 198, 202–03 (N.D.Ill. 1980) (Moran, J.); Ridgeway v. International Brotherhood of Electrical Workers, 466 F.Supp. 595 (N.D.Ill.1979) (Crowley, J.); Garcia v. Rush-Presbyterian-St. Luke's

*Medical Center*, 80 F.R.D. 254 (N.D.Ill.1978) (Leighton, J.); *Ortega v. Merit Insurance Co.*, 433 F.Supp. 135 (N.D.Ill.1977) (Will, J.). Central's argument is rejected.

### Badillo's Individual Title VII Claims

Badillo's own charges of discrimination are necessarily bounded by what he can prove about Central's conduct directed at him. That fact serves as a natural limitation on his individual lawsuit, avoiding the introduction of extraneous issues. But the administrative remedy exhaustion requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII") impose a further limitation on Badillo's Complaint, expressed in the language adopted by our Court of Appeals in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir. 1976), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976):

> The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that "the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations."

■ Badillo's EEOC charge complained only of his allegedly unfair *discharge*, by which "I have been discriminated against because of my national origin." In its investigation and June 30, 1977 right-to-sue letter, the EEOC adverted to other on-the-job discrimination against Hispanic employees [1] and went on to consider Central's allegedly race-and-national-origin-discriminatory *hiring* policies (of which more later).

Under the circumstances it is not necessary to consider as a matter of *pleading* just what if any other acts by Central against

Badillo himself meet the *Jenkins* test. Because of the self-limiting aspect of Badillo's claims, their scope will readily become defined during the course of discovery. Accordingly Central's motion to strike allegations from the Second Amended Complaint on this score will be denied.

### Class Claims

As a practical matter, of course, it is Badillo's class claims that pose great potential for expanding the scope of this lawsuit. It is perhaps fitting that the legal issues in this area are also the most troublesome.

■ As for the Section 1981 class claims, we need look only at the general class action requirement that a plaintiff "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee To Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974); *Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th Cir. 1980). For the same reason referred to in the last paragraph of the preceding section, it is premature to determine as a matter of pleading what class claims Badillo may assert—they will be limited in type to those represented by the injury or injuries Badillo himself has suffered.[2] No allegations will be stricken from the Second Amended Complaint at this time relating to Section 1981 class claims.

■ Title VII class claims present greater problems. Courts are divided as to whether an employee's invocation of Title VII for discriminatory practices that have impacted narrowly on him or her can bring into the Court's ambit much broader practices affecting the class of which plaintiff is

1. That broader consideration distinguishes this case from Judge Marovitz' decision in *Abraham v. Field Enterprises*, 511 F.Supp. 91 (N.D. Ill.1980), on which Central seeks to rely. See Judge Moran's discussion of Counts I and II of the Complaint in *Aponte*, 500 F.Supp. at 200–02. This Court makes no comment on whether discovery will narrow the permitted scope of Badillo's individual claims.

2. For example, if Badillo were able to prove only an allegedly discriminatory firing, class claims related to firing or other disciplinary measures by Central would appear to come properly within this Court's jurisdiction.

a member. In this Court's view, *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403–04, 97 S.Ct. 1891, 1896-97, 52 L.Ed.2d 453 (1977), requires a close nexus between the individual plaintiff's claims of discrimination and those of other class members whom the individual plaintiff seeks to represent. *Accord, Scott v. University of Delaware*, 601 F.2d 76, 185–88 (3d Cir. 1979), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *Hill v. Western Electric Co., Inc.*, 596 F.2d 99, 101 02 (4th Cir. 1979), *cert. denied*, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979). But the Fifth Circuit differs in its reading of *East Texas*; see the most recent of its decisions, *Falcon v. General Telephone Co. of the Southwest*, 626 F.2d 369, 375 (5th Cir. 1980), upholding "across the board" claims attacks on unequal employment practices:

> It is therefore apparent that this Court permits an employee complaining of one employment practice to represent another complaining of another practice, if the plaintiff and the members of the class suffer from essentially the same injury. In this case, all of the claims are based on discrimination because of national origin. It is consistent with the holding in *Rodriguez* and the policy of Title VII to allow a plaintiff to represent a class suffering from a common discriminatory complaint. While similarities of sex, race or national origin claims are not dispositive in favor of finding that the prerequisites of Rule 23 have been met, they are an extremely important factor in the determination, that can outweigh the fact that the members of the plaintiff class may be complaining about somewhat different specific discriminatory practices.

Neither party has cited, and this Court is unaware of, any Seventh Circuit post-*East Texas* decision casting light on this issue.

 As in its original Opinion, this Court remains of the opinion that a minority employee who has been *hired* by an employer and claims a discriminatory discharge is not a proper representative of a class of persons allegedly *not* hired because of the same discriminatory mind-set. It is not necessary to decide the somewhat closer *Falcon* question: whether an individual complaining of discrimination with respect to promotion could also represent a class complaining of discrimination with respect to hiring. At this point the Court concludes that (1) allegations in the Second Amended Complaint regarding training, placement, assignments, promotion and transfer will not withstand Central's motion, except to the extent if any that such matters are closely linked to discipline and termination (a nexus that this Court believes would be difficult to establish), but (2) layoff and discipline are of the same genus as termination, so that they remain as class allegations for which Badillo would be a suitable class representative. No further pleading by Badillo is required; this opinion will define the scope of Central's required responsive pleading and discovery responsibility.

### Conclusion

It is well past the time that the pleading skirmishes should have ended in this case. Central is ordered to file its answer to the Second Amended Complaint on or before February 17, 1981, and the parties are directed to proceed with the substantive aspects of the action forthwith. This action is set for a status report March 11, 1981 at 9:15 a. m., at which time the parties are to advise the Court regarding their progress toward the ultimate trial or other disposition of the case.