Nancy **RESNICK**, et al., etc., Plaintiffs,

v.

**AMERICAN DENTAL ASSOCIATION,**
**Defendant.**

No. 79 C 3785.

United States District Court,
N. D. Ill., E. D.

May 18, 1981.

Charles Barnhill, Jr., Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.

Peter M. Sfikas, Larry R. Eaton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Nancy Resnick ("Resnick") sued the American Dental Association ("ADA") on her own behalf and as a representative of all women similarly situated, alleging that ADA has engaged in a series of employment practices discriminating unlawfully against women. Now at issue are a number of motions, each directly or indirectly relating to Resnick's request for class certification. For the reasons stated in this memorandum opinion and order:

(1) Resnick's motion for leave to file a second amended complaint (the "Complaint") has been granted.[1]

(2) Resnick's motion for class certification is granted in principal part, though denied to the limited extent discussed in this opinion.[2]

(3) Resnick's motion to compel discovery is granted.

### Facts [3]

Resnick was employed by ADA in its Chicago headquarters from October 1973 through February 1979. She served as one of two Associate Editors in ADA's Editorial Department, with major responsibility for a publication entitled the "ADA News." ADA's other Associate Editor was male and, according to Resnick, received greater pay for equivalent work.

Resnick filed her two-count complaint after receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). In Count II Resnick alleges

1. Resnick's motion for leave to file the Complaint was granted in open court April 15, 1981. This opinion will treat briefly with the basis for that ruling.

2. ADA had also moved to strike or dismiss Resnick's class allegations in her First Amended Complaint. Arguments raised by that motion will be considered in the context of Resnick's class certification motion (under the Complaint) rather than separately.

3. For purposes of this opinion the "facts" are those alleged in the Complaint. This opinion does not of course imply any ruling on the accuracy of the allegations.

that ADA violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying her less than her male counterpart. In Count I Resnick seeks individual and class relief under Title VII. As to ADA's alleged class-wide violations Resnick claims that:

Defendant has maintained a continuing policy and practice of denying women equal employment opportunities, in the following and other related ways:

(a) Women employees have been limited to positions of lower pay and less responsibility through discrimination in job assignment, training, promotion and transfer. This discrimination against women has been facilitated by a highly discretionary policy for awarding job opportunities....

(b) Women employees have been discriminated against in terms of pay by receiving less pay than men doing similar work, or by receiving less pay than they would have received had they been men.

(c) Women applicants have been denied employment or assigned to positions of lower pay and less responsibility. Women employees are adversely affected by these hiring practices because the absence of more than a token number of women in supervisory and management positions perpetuates and exacerbates other policies and practices of discrimination.

For her individual cause of action Resnick alleges that:

(1) She has been injured by "defendant's continuing policy and practice of discriminating against women in terms of pay."

(2) All the policies in paragraphs (a), (b) and (c) above "have deprived Ms. Resnick of her right to work in an integrated environment and have made her more vulnerable to sex discrimination."

In the Complaint Mona Signer ("Signer") is named as an additional plaintiff. Signer was employed by ADA at its Chicago headquarters as an Assistant Secretary for the Council on Dental Health from February 1977 until her discharge in April 1979.

Signer alleges that ADA has discriminated against her by:

(1) limiting job opportunities available to women;

(2) "discriminating against women in terms of pay";

(3) discriminating against her on account of her sex with respect to discipline and discharge; [4] and

(4) implementing "discriminatory hiring, assignment, promotion and discharge policies ... [that] have deprived Ms. Signer of her right to work in an integrated environment and have made her more vulnerable to sex discrimination."

Resnick has moved "to certify this cause as a class action on behalf of all women applicants and all women who have or will be employed by defendant American Dental Association, in all of its offices." ADA opposes both class certification and the addition of Signer as plaintiff. On the discovery front, Resnick has moved to compel ADA to answer certain interrogatories and comply with certain document requests.

### Three Contested Motions

#### Resnick's Motion for Leave To File the Complaint

Resnick moved for leave to file the Complaint. It differs from the first amended complaint by (1) adding Signer as an additional plaintiff and (2) (in Resnick's words) "clarify[ing] the claims of Ms. Resnick and the proposed class." ADA objected only to the first of the revisions, asserting that Signer cannot properly be joined in this action.

Resnick maintains that Signer may be joined as an additional plaintiff under Fed. R.Civ.P. ("Rule") 20(a):

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question

---

**4.** Signer claims she "was unfairly discharged because of her sex and because of her previous complaints about sex discrimination and her advocacy of equal employment opportunities for women at the ADA."

of law or fact common to all these persons will arise in the action.

She argues that the requirements of Rule 20(a) are met because "both Resnick and Signer allege that the injuries they suffered are a part of defendant's ongoing policy of discriminating against women" (the "same transaction ... or series of transactions" requirement), and a determination "whether the ADA did in fact maintain a policy of limiting women to positions of lower pay and less responsibility" (the "common question" requirement) is relevant to both plaintiffs' claims. Resnick further contends that "substantial savings of time and resources of the Court and the parties" will result from joinder, for in the absence of joinder Signer will bring an individual suit. Each suit would allegedly require substantially identical "discovery of personnel practices and of data on which to base a statistical showing of discrimination." [5]

ADA argues that joinder is improper because the claims of Resnick and Signer "arise out of wholly separate and distinct transactions." It urges that Resnick and Signer were employed in different departments and for the most part allege different types of discrimination, Resnick alleging discrimination in pay while Signer's claims involve pay, promotional opportunities, discipline and discharge.

█ This Court agrees that the allegations of the Complaint satisfy the Rule 20(a) requirements. Discrimination directed at each of Resnick and Signer allegedly resulted from the same general policy, administered by the same ADA personnel. That policy is the "transaction" common to each plaintiff's claim, about which questions of law and fact "common" to both claims may be raised. *See, e. g., Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332–34 (8th Cir. 1974).

Where Rule 20(a)'s criteria are met, this Court has discretion to order joinder. That Rule was designed to promote trial convenience, expedite the final determination of disputes and prevent unnecessary multiple lawsuits. 7 Wright and Miller, Federal Practice and Procedure § 1652 at 265 (1972). Resnick identified several respects in which joinder would serve those purposes, none of which ADA seriously contested. For that reason the Court granted Resnick's motion for leave to file the Complaint.[6]

### Resnick's Motion for Class Certification
#### A. Standing

Resnick and Signer seek to represent the class of "all women applicants and all women who have been or will be employed by defendant American Dental Association, in all of its offices." Wholly apart from the Rule 23 requirements for class certification, ADA contends that the motion for class certification must be denied (and the class allegations stricken) because plaintiffs lack standing to bring this action on behalf of the proposed class members.

This Court has addressed the standing issue in the class action context in two recent opinions, *Badillo v. Central Steel & Wire Co.*, 495 F.Supp. 299 (1980), and *Fields v. Village of Skokie*, 502 F.Supp. 456 (1980). In each instance plaintiffs sought to represent a class whose alleged injuries were wholly different from the type suffered by the named plaintiffs (hiring versus non-hiring discrimination). For that reason this Court held that plaintiffs were without standing to raise the class claims. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) is particularly instructive on that issue (emphasis added):

> As this Court has repeatedly held, a class representative must be a part of the class and "possess the same interest *and suffer the same injury*" as the class members.

---

**5.** Resnick seeks to draw support from the fact that "all personnel decisions—hire, transfer, promotion and pay—are funneled through the same Personnel Director and ultimately must be approved by the same Executive Director...." Accordingly, she reasons, in the absence of joinder those persons would have to be deposed (and examined at trial) twice.

**6.** If subsequent discovery were to indicate that such joinder is improper or judicially uneconomical, ADA would of course be entitled to move for a severance under Rule 21.

*See also, Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343 (1975).

ADA seeks to parallel this case to *Badillo* and *Fields*, arguing that the class members' injuries are not of the same type as those allegedly incurred by Resnick and Signer. Here the *class* claims assert discrimination in (1) job assignment, training, promotion and transfer, (2) pay and (3) hiring and initial assignment to positions within ADA. Resnick seeks individual relief only for alleged pay discrimination and Signer for alleged discrimination in terms of pay, access to job opportunities and discipline and discharge.

■ Despite ADA's arguments, Resnick and Signer plainly satisfy the standing requirement as to the first two categories of alleged class discrimination. Signer's charge that ADA discriminatorily denied her certain transfers and promotions corresponds to the first class allegation: discrimination in "job assignment, training, promotion and transfer." Both Resnick and Signer alleged discrimination in pay, corresponding to the second class category.

But for the reasons stated in *Badillo* and *Fields*, none of Resnick's or Signer's individual claims affords them standing to represent class members allegedly affected by the third category—hiring and initial job assignment. Each of them obtained employment with ADA, and nothing in their individual claims may fairly be read to imply that either of plaintiffs' initial job assignments was discriminatory.

This Court thus holds that plaintiffs may properly represent proposed class members allegedly discriminated against in job assignment, training, promotion and transfer (Complaint ¶ 10(a)) and pay (Complaint ¶ 10(b)). Plaintiffs do not however have standing to assert class claims based on

hiring and initial job assignment (Complaint ¶ 10(c)).[7]

### B. *Prerequisites to Class Certification Under Rule 23*

Rule 23 provides that an action is maintainable as a class action if the plaintiff satisfies the four prerequisites of Rule 23(a) and the requirements of any of Rule 23(b)(1), (2) or (3). Because plaintiffs invoke Rule 23(b)(2), they must demonstrate that:

1. The class is so numerous that joinder of all members is impracticable (Rule 23(a)(1)).

2. There are questions of law or fact common to all members of the class (Rule 23(a)(2)).

3. Resnick's and Signer's claims are typical of the claims of the class (Rule 23(a)(3)).

4. Resnick and Signer will fairly and adequately protect the interests of the class (Rule 23(a)(4)).

5. ADA has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief (Rule 23(b)(2)).

### 1. *Applicability of Patterson v. General Motors Corp.*

ADA has raised numerous objections to certification and asserts that Signer and Resnick have failed to satisfy any of the Rule 23 prerequisites. At the outset however a brief discussion of *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir. 1980) is appropriate, for ADA claims that case is dispositive of the certification motion.

In *Patterson* plaintiff, a black male, sued his employer individually and on behalf of "Negro persons and other minorities who

---

7. Signer and Resnick also assert that they have been deprived of their right to work in an integrated environment and made more vulnerable to sex discrimination because of ADA's overall policies. Those claims are individual in nature. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209–10, 93 S.Ct. 364, 366–367, 34 L.Ed.2d 415 (1972). But *East Tex-*

*as Motor Freight System* undermines any contention that such individual standing gives rise to standing to represent persons *not* hired. Whether considered under the standing doctrine or Rule 23, plaintiffs' "integrated environment" argument does not support the broad class representation they seek.

are employed, or might be employed [by defendant].... " Patterson sought a preliminary injunction "to restrain defendants (1) from racially discriminating against him and members of the class with respect to compensation, terms, conditions and privileges of employment and (2) from limiting, segregating and classifying GM employees in ways which deprive the class of equal employment opportunities." On his own behalf, he charged that defendant had unlawfully replaced him with a white worker, failed to promote him, maintained an all-white department and harassed him for seeking redress of various grievances.

Our Court of Appeals affirmed the district court's denial of class certification on the ground that none of the Rule 23 requirements had been satisfied. As for the "commonality" requirement (Rule 23(a)(2)) the Court recognized that "a class action will not be defeated solely because of some factual variances among class members' grievances." Nevertheless it went on to say that plaintiff "ha[d] simply asserted *no* facts relating to other members of the purported class. Moreover 'even if the plaintiff were to specify grievances of other members ... the acts for which plaintiff complains are not susceptible to class treatment....' The issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy...." 631 F.2d at 481 (citations omitted).

Essentially the same analysis compelled the conclusion that plaintiff had failed to satisfy the requirements of Rule 23(a)(3) and (4). As to "typicality" (Rule 23(a)(3)) the Court said that "because plaintiff's claims are so personal—*he* was replaced by a less senior white worker, *he* was harassed ... it is predictable that a major focus of the litigation ... [would have been] on an arguable defense unique to the named plaintiff..." (631 F.2d at 481) and accordingly his claim could not reasonably be considered "typical." As for plaintiff's ability fairly and adequately to represent the interests of the class (Rule 23(a)(4)), the Court reasoned that the "personalized nature" of plaintiff's grievances, as contrasted with the "typical Title VII class action involving a challenge to employment policies of general application," justified the district court in concluding that plaintiff could not adequately represent the class claims (631 F.2d at 481–82).

ADA argues that for class certification purposes plaintiffs' lawsuit is identical to *Patterson*: In each instance a plaintiff seeks *class* relief for allegedly broad and subjective class-wide discrimination as well as *individual* relief for discrimination highly particularized to plaintiff's own factual circumstances. That argument is specious but ultimately unpersuasive. In *Patterson* the plaintiff sought class *relief* in the terse manner already noted, simply praying for a declaratory judgment and for an injunction to restrain his employer from engaging in discriminatory practices. But as the Court expressly acknowledged, 631 F.2d at 480:

[E]xcept for his assertion that he was filing suit on behalf of all minority workers at GM, plaintiff's complaint was not framed in class action terms at all. Although he did state that the defendants' discriminatory policies adversely affected the purported class, he nowhere substantiated that claim with any factual allegations of class-wide discrimination. The facts alleged in plaintiff's complaint relate solely to plaintiff's personal grievances.... Plaintiff has not indicated that any other employee has ever been discriminated against in the same way or that there is a likelihood of such a future class ever existing.

In contrast Complaint ¶ 10 here alleges a specific discriminatory policy and the purported consequences of that classwide discrimination.[8] Whereas the class claims in *Patterson* appear to have been no more

---

**8.** ADA correctly points out that Complaint ¶ 10 does not allege specific *instances* of discrimination against class members. But *Patterson* speaks of "factual allegations of class-wide discrimination," not allegations of specific instances of discrimination. To require more as a matter of pleading would not comport with the "notice pleading" approach of Rule 8(a).

than an afterthought, that plainly is not true in this case.

ADA argues that even had "class allegations" been made in *Patterson* the Court of Appeals still would have rejected certification: "[E]ven if the plaintiff were to specify grievances of other members of the purported class, the acts for which plaintiff complains are not susceptible to class treatment. . . ." (631 F.2d at 481). ADA urges that language mandates denial of certification, whether or not Complaint ¶ 10 states class claims in a manner lacking in *Patterson*.

This Court does not read *Patterson* so broadly. There identification of grievances applicable to class members generally would not have cured the certification defect—the lack of a common policy "connecting" class claims to plaintiff's own. Our Court of Appeals made precisely that point (*id.*):

> In other words, the plaintiff's claims do not relate to general policies or practices which are allegedly discriminatory, but rather to individualized claims . . . which could not possibly present common questions of law or fact sufficient to justify class action treatment.

■ Unlike *Patterson*, Resnick and Signer *have* alleged that a general discriminatory policy is responsible for the individual instances of discrimination. Stated differently, the only common denominator among the claimed class members in *Patterson* would have been that each suffered a different instance of racial discrimination. Discrimination is a common denominator here as well, but the crucial difference is that all such claimed discrimination stems from ADA's allegedly pervasive general policy. *Patterson* does not compel denial of plaintiffs' motion for certification.

### 2. Class Size: "Numerosity"

Plaintiffs claim their proposed class comprises more than 200 present and an unspecified number of past ADA female employees. ADA does not dispute that a class size of 200 satisfies Rule 23(a)(1). Instead it argues that plaintiffs' calculation of the size of the proposed class is inflated because (1)

the class is "purely speculative" (*Patterson*, 631 F.2d at 480); (2) the proposed definition includes both "exempt" and "non-exempt" employees; and (3) the proposed definition includes women from all of ADA's offices.

■ None of those objections is tenable. *Patterson*'s inapplicability has already been discussed. As for the "exempt"-"non-exempt" argument, plaintiffs allege that a policy of discrimination has been applied to *all* female ADA employees. That allegation plainly supports inclusion of exempt and non-exempt employees in the same class for numerosity purposes. In the same way the Complaint alleges that the discriminatory policy has been implemented throughout ADA's offices, so that female employees at all offices may properly be counted together. Plaintiffs' proposed class definition plainly conforms to Rule 23(a)(1).

### 3. Common Questions: "Commonality"

■ ADA contends that "common questions of law and fact are absent in this case" because each of Resnick and Signer poses but one factual and legal question common to none of the putative class members—the existence and legality of the specific discrimination of which the named plaintiffs complain individually. Again ADA's characterization simply ignores the Complaint's class allegations. Plaintiffs plainly raise a question of fact and law common to all class members: whether ADA has implemented an "across the board" policy of sex discrimination. Under the Complaint's allegations each class member has been unlawfully impacted by such a policy.

■ On that score Judge Flaum's statement in *Edmondson v. Simon*, 86 F.R.D. 375, 24 FEP Cases 1035, 1036-37 (N.D.Ill. 1980) is persuasive:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. There need be only a single issue common to all members of the class. Therefore, when the party opposing the class has engaged in some course of conduct that affects a

group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.... Where an across-the-board or permeating policy of discrimination is alleged in a class action, the requirement under Rule 23(a)(2) is satisfied.

So a diversity of factual circumstances underlying individual class members' claims is irrelevant for Rule 23(a)(2) purposes as long as "there are questions of law or fact common to the class."[9] That is clearly the case under the Complaint, and Rule 23(a)(2) poses no problem.[10]

### 4. Representative Claims: "Typicality"

■ ADA's claim that plaintiffs fail to satisfy the "typicality" requirement of Rule 23(a)(3) mirrors its numerosity and commonality arguments: Each of plaintiffs' individual claims is so particularized that there is no adequate nexus between those claims and the kinds of discrimination allegedly suffered by class members. Once again ADA has read Rule 23 and the Complaint's class allegations too narrowly.

■ Factual variations among class members' individual claims do not per se defeat certification on Rule 23(a)(3) grounds. Patterson, 631 F.2d at 481; 7 Wright and Miller, Federal Practice and Procedure § 1764 at 613 (1972). While some decisions have said that Rule 23(a)(3) is to

be rigidly applied, this Court finds typicality present under the allegations of the Complaint. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Newberg, Class Actions § 1115(b) at 185 (1977). Here plaintiffs allege that they and other class members suffered discrimination as a result of a uniform, centrally administered policy. Because each class member's employment situation is or was at least somewhat distinct—for example in terms of pay, position responsibility and seniority—such a policy would necessarily manifest itself in a variety of ways. To read that factor as rendering claims atypical of each other for class certification purposes would unduly confine class actions to the narrowest of circumstances.

In short, the gravamen of plaintiffs' individual and class allegations is that ADA applied an unlawful policy to *all* women employees. That contention satisfies Rule 23(a)(3).[11]

### 5. Adequacy of Representation

ADA raises three objections to class certification on adequacy of representation grounds:

1. Plaintiffs held "exempt" positions and cannot be expected to represent "non-exempt" class members adequately.

---

**9.** Plaintiffs seek class certification under Rule 23(b)(2), requiring only that "the party opposing the class has acted or refused to act on grounds generally applicable to the class." No balancing is required as under Rule 23(b)(2) to decide whether "questions of law or fact common to the members of the class predominate over questions affecting only individual members...."

**10.** ADA also objects under Rule 23(b)(2) that plaintiffs have failed to demonstrate any basis for their allegation of a discriminatory policy. At the same time, ADA has so far refused to produce any records that might shed light on the validity of plaintiffs' class claims. Under those circumstances the Complaint must survive ADA's motion. Should subsequent discovery reveal that plaintiffs' allegation of such a policy is unfounded, ADA is of course free to move for decertification or dismissal.

**11.** *Patterson* is not contrary. Our Court of Appeals there held that typicality was not present "because plaintiff's claims are so personal—*he* was replaced ... [and therefore] it is predictable that a major focus of the litigation [would have been] on an arguable defense unique to the named plaintiff...." It must be remembered that Patterson had alleged *no* "policy" (no "facts" of class-wide discrimination) upon which typicality might have been predicated. In that respect Complaint ¶ 8(f) largely dispels the concerns expressed by our Court of Appeals in *Patterson*: "The principal evidence in this case will be directed at proving the across-the-board discriminatory policies and practices of the defendant through statistical and other means." This Court of course reserves the right to decertify the class if that statement (or any other relevant allegations supporting certification) proves to be erroneous.

2. Plaintiffs were employed at ADA's Chicago office and thus are inappropriate representatives of Washington, D.C. office employees.

3. Plaintiffs are former ADA employees and may not, consistent with Rule 23(a)(4), represent current employees.

Of these, the first two are essentially restatements of the arguments ADA raised, and this Court has rejected, in the commonality and typicality contexts. On the same analysis there is no reason to question plaintiffs' assertion that, to be consistent with the requirement of Rule 23(a)(4), they will vigorously prosecute claims on behalf of the entire class.

■ ADA's third objection on adequacy grounds, though in substantial part answered by the same considerations already discussed, does have some support in the cases. *See, e. g., Collier v. Hunt-Wesson Foods, Inc.,* 12 E.P.D. ¶ 11,149 (S.D.Ga.1976). But this Court concurs in the view expressed in such cases as *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir. 1975):

> We believe that a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices. Whether a party adequately represents a class depends on all the circumstances of the particular case. 3B J. Moore, Federal Practice ¶ 23.07[1] (2d ed. 1974) [hereinafter cited as Moore]. That a person is no longer employed with a company and is not entitled to reinstatement is but one of the circumstances to be considered in the determination of whether Rule 23(a)(4) has been met. In fact, as the court observed in *Mack v. General Electric Co.,* 329 F.Supp. 72, 76 (E.D.Pa.1971), with respect to plaintiffs who were former employees of the company, "being familiar with [the company's] employment practices and being free from any possible coercive influence of [the company's] management, [the plaintiffs] are

better situated than either job applicants or present employees to present an intelligent and strongly adverse case against [the company's] alleged discriminatory practices." Moreover, were the position advanced by Liberty Mutual adopted, employers would be encouraged to discharge those employees suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing the suit as a class action. *Reed v. Arlington Hotel Co.,* 476 F.2d 721 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

Nothing in the record before the Court suggests that plaintiffs will not "adequately represent" current ADA employees. Indeed the zealous and comprehensive manner in which plaintiffs have sought class certification for a class including those persons indicates the opposite. This Court accordingly finds that plaintiffs have satisfied the requirement of Rule 23(a)(4) as to all putative class members they seek to represent (except for the standing limitation already discussed).

*6. Rule 23(b)(2)*

■ Plaintiffs seek class certification under Rule 23(b)(2):

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . .
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

Neither side's memoranda address the Rule separately, so that its applicability is really subsumed by the Rule 23(a)(2) commonality issue already discussed. Plaintiffs allege ADA has "maintained a continuing policy and practice of denying women equal employment opportunities" and seek declaratory and injunctive relief as to that policy.[12]

---

**12.** Plaintiffs also seek "appropriate" monetary relief for themselves and allegedly aggrieved class members. That prayer does not serve to

defeat class certification on Rule 23(b)(2) grounds. *See generally,* 7A Wright and Miller,

Such an allegation and prayer for relief plainly satisfy Rule 23(b)(2).

### Resnick's Motion To Compel Discovery

Resnick seeks to compel disclosure of documents and information requested in her First Set of Interrogatories (Interrogatories Nos. 1, 2, 3, 4, 5 and 6); First Request for Production of Documents (Request Nos. 1, 3 and 4); and Second Request for Production of Documents (all documents other than those relating to Resnick, which ADA has already provided). Broadly categorized, those requests are of two types: (1) personnel information on ADA employees and employment policies and (2) information pertaining to sex discrimination investigations of ADA by the Department of Labor and EEOC. In its opposing memorandum ADA raises four objections:

(1) The requests impermissibly inquire into actions before either Resnick or Signer was employed.

(2) Information should be limited in scope to that pertaining to Resnick's and Signer's employment "categories."

(3) Agency investigation material is not discoverable because it would not be admissible at trial.

(4) Resnick's requests are unduly burdensome.

### 1. "Relevant Time Period"

Although Resnick was employed by the ADA only from 1973 to 1979, she seeks various documents and information from 1970 to the present. ADA asserts that request is impermissibly broad because information outside the period during which Resnick was employed is irrelevant to this lawsuit.

█ There is no doubt that information as to any past (pre-1973) discrimination could be highly relevant to the issue whether ADA engaged in such discrimination during Resnick's employment. Thus even if Resnick were suing only on her own behalf, ADA's objection to discovery regarding the pre-employment period could not prevail. Given plaintiffs' *class* allegations (and the fact that the class encompasses *current* ADA employees [13]), the same principle extends to the post-termination period. This Court therefore rejects ADA's argument that discovery should be confined to the period of Resnick's (or Signer's) employment.

### 2. Scope of Resnick's and Signer's Employment

█ ADA next urges that discovery should be limited in accordance with the particular jobs or job classifications ("exempt" versus "non-exempt") represented by Resnick's and Signer's employment. That argument cannot survive this Court's ruling that plaintiffs may pursue this litigation as class representatives, seeking relief on behalf of persons in jobs and classifications other than their own.

### 3. Admissibility of Agency Investigation Materials

█ In response to plaintiffs' request for reports of investigations of sex discrimination by EEOC and the Department of Labor (the "reports"), ADA asserts that such reports would be inadmissible at trial and are therefore not discoverable.[14] That objection flies in the face of the express language of Rule 26(b)(1):

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... It is not ground for objection that the information sought will

Federal Practice and Procedure § 1775 at 22–24 (1972).

**13.** See the earlier discussion under "Adequacy of Representation," including the quotation from the *Wetzel* case.

**14.** ADA also apparently raised a "privilege" objection to certain of those requests at the time it originally answered plaintiffs' interrogatories and requests to produce. However ADA has not sought to invoke any "privilege" in its memorandum in opposition to Resnick's motion to compel discovery. This Court thus has no reason or basis for ruling on the propriety of any such objection.

be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Clearly the reports satisfy the "reasonably calculated" standard (indeed ADA itself has made no claim to the contrary). ADA has failed to raise any valid objection to their discovery.

### 4. Burdensomeness of Resnick's Requests

██ ADA claims that virtually every discovery request to which it objects would be (were discovery compelled) unduly burdensome. Such an "objection" cannot prevail over Resnick's discovery requests for two reasons. First, ADA's charges of burdensomeness are wholly conclusory. Absent greater concreteness this Court cannot accept ADA's characterization of the discovery sought. Second, Resnick properly points out that undue "burdensomeness" should not in this instance preclude discovery. Instead, under Rule 33(c) ADA's proper response to a demonstrably burdensome request should be to allow plaintiffs access to the relevant business records for examination, with any necessary copying to be at plaintiffs' own expense.

\*   \*   \*   \*   \*   \*

██ Because none of ADA's objections to plaintiffs' discovery requests is well grounded, Resnick's motion to compel discovery is granted.[15] However the Court is mindful of ADA's possible interest in preserving the confidentiality of certain of the requested items. ADA is directed on or before May 26, 1981 to file in the Court's chambers (with a copy to plaintiffs' counsel) a letter advising that no protective order is desired or, alternatively, a proposed form of protective order to the Court applicable to the mandated discovery. If a proposed order is so tendered, plaintiffs may submit their comments or their own proposed form on or before June 2, 1981.

15. In its response to Resnick's motion to compel discovery ADA moved for a protective order to stay or otherwise limit discovery pending this Court's determination on the class certifi-

### Conclusion

As for the first section of this opinion, Resnick's motion for leave to file the Complaint has already been granted by this Court on April 15, 1981. Resnick's motion for class certification is granted except as to persons (and their claims) identified in Complaint ¶ 10(c) (that subparagraph is not physically stricken from the Complaint only because it is effectively referred to in Complaint ¶¶ 11(c) and 12(d)). Finally, Resnick's motion to compel discovery is granted, subject to submission of a proposed form of protective order as provided in this opinion.

cation motions. That motion is mooted by the Court's determination that class certification is proper.