EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Petitioner-Appellee,

v.

TEMPEL STEEL COMPANY,
Respondent-Appellant.

No. 86–1679.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1986.

Decided March 20, 1987.

William M. Stevens, Rooks, Pitts & Poust, Chicago, Ill., for respondents.

Mark S. Flynn, Office of Gen. Counsel, E.E.O.C., Washington, D.C., for petitioner.

Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Tempel Steel Company appeals from a final order of the district court enforcing a subpoena *duces tecum* issued by the Equal Employment Opportunity Commission (the EEOC or Commission) pursuant to section 710 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-9. 627 F.Supp.

788. We affirm, but for reasons other than those expressed by the district court.

## I

The EEOC issued the subpoena in connection with its investigation of a charge of discrimination filed by Michael Austin on November 15, 1983. In his charge, Austin, who is black, stated that he was laid off from his position as a press operator at Tempel Steel on September 8, 1982. Austin claimed that early in November 1983 he learned that Tempel Steel had been hiring employees for some time, most of whom were white. When on November 14, 1983 he asked the company to recall or rehire him, he was told he would not be recalled or rehired because of his previous poor attendance and negative attitude. Austin alleged that Tempel Steel's failure to rehire or recall him was racially motivated.

One day after receiving the charge, the EEOC sent a copy to the Illinois Department of Human Rights (the IDHR), a deferral agency under section 706(c) of Title VII, 42 U.S.C. § 2000e-5(c).[1] On the same day, the IDHR waived processing of the charge.[2] The EEOC thereafter commenced its investigation.

After the EEOC served Tempel Steel with notice of the charge, the company responded with its version of the facts surrounding Austin's termination. According to Tempel Steel, on September 8, 1982, Austin was included in a six-month plant-wide layoff. The layoffs were all automatically converted to terminations on March 9, 1983, the end of the six-month period. On March 4, 1983, in response to his inquiries, the company informed Austin that he would not be recalled or rehired in the future because of his poor work record. Following this conversation, Austin inquired about his possible future employ-

---

1. Section 706(c) gives a state with its own employment discrimination agency up to sixty days to attempt to resolve a discrimination claim before the EEOC intervenes.

2. In order to avoid duplication of effort, the EEOC enters into worksharing agreements with state or local agencies. Section 7 of the worksharing agreement between the IDHR and the

EEOC in effect in November 1983 provided that the EEOC would assume primary responsibility for processing all charges originally received by the EEOC. Section 10 stated that, with respect to those charges over which the EEOC has assumed primary responsibility, the IDHR would waive its exclusive right under section 706(c) to initially process those charges.

ment three or four additional times, the last such inquiry occurring on November 14, 1983.

On December 13, 1984 the EEOC issued the subpoena in question requesting information about Tempel Steel's hiring, layoff, and recall practices. When the company refused to comply, the EEOC initiated this subpoena enforcement proceeding in the United States District Court for the Northern District of Illinois. Tempel Steel moved to dismiss the EEOC's petition and to quash the subpoena, arguing primarily that the EEOC lacked jurisdiction over the charge because Austin had filed with the EEOC more than 180 days after March 4, 1983, the date he first learned he would not be recalled or rehired.[3] The company claimed that Austin was not entitled to the 300-day extended filing period provided in section 706(e), 42 U.S.C. § 2000e-5(e),[4] because his charge was not filed with or referred to the IDHR within the state's 180-day limitations period.[5]

The district court rejected Tempel Steel's untimeliness claim, holding that a Title VII complainant whose claim arises in a state with a section 706(c) deferral agency is entitled to the extended 300-day filing period regardless of the timeliness of the complainant's state agency filing. Because Austin had filed his charge with the EEOC within the 300-day filing period, the district court enforced the subpoena, although it stayed compliance with the subpoena pending the outcome of this appeal.

**3.** The company also made several specific objections to the form and scope of the subpoena, but the district court did not address those objections.

**4.** Section 706(e) states in part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty

## II

Section 706(e) of Title VII, 42 U.S.C. § 2000e-5(e), provides that complaints of unlawful employment practices generally must be filed with the EEOC within 180 days of the alleged discriminatory act. An extended 300-day filing period is available, however, where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." *Id.* Tempel Steel argues that the entire purpose of the extended filing period is to allow a state with a section 706(c) deferral agency to investigate and resolve the discrimination claim and thereby avoid federal intervention. According to Tempel Steel, permitting an individual who has failed to institute timely state proceedings to benefit from the extended filing period would be inconsistent with the deferral scheme.[6] Because Austin filed with the EEOC more than 180 days after first learning that he would not be rehired, Tempel Steel maintains that his claim is time-barred and that the EEOC therefore does not have authority to investigate his claim.

In response, the EEOC contends that the alleged untimeliness of the charge is not a defense to enforcement of the subpoena. The EEOC additionally argues that the 300-day extended period applies in deferral states whether or not the charge is timely filed under state law. The Commission

days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier....

42 U.S.C. § 2000e-5(e).

**5.** *See* Ill.Ann.Stat. ch. 68, ¶ 7-102(A)(1) (Smith-Hurd Supp.1986).

**6.** Tempel Steel also argues that Austin is not entitled to the 300-day filing period because the IDHR waived its right to process the charge under its worksharing agreement with the EEOC. Again, the company contends that under such circumstances the 300-day extended period would not serve its intended purpose. However, Tempel Steel failed to raise this particular argument before the district court and therefore waived it. *See Real Estate Data, Inc. v. Sidwell Co.,* 809 F.2d 366, 376-77 (7th Cir. 1987).

points out that section 706(e) says nothing about filing with the state or local agency within the time period prescribed by state law, and that every court of appeals to consider the question has ruled that noncompliance with the state limitations period does not render the 300–day period inapplicable.[7]

◼ We agree with the EEOC that Tempel Steel's timeliness objection is not a proper defense to enforcement of the subpoena. We therefore decline to resolve, at this stage of the proceedings, the question of whether a complainant in a deferral state must file a timely charge with the state agency to be entitled to Title VII's 300–day filing period. In a subpoena enforcement proceeding, the role of the court is "sharply limited." *EEOC v. South Carolina Nat'l Bank,* 562 F.2d 329, 332 (4th Cir.1977). Such proceedings are designed to be summary in nature. *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 308–09 (7th Cir.1981). As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena. *EEOC v. Illinois State Tollway Auth.,* 800 F.2d 656, 658 (7th Cir. 1986); *EEOC v. A.E. Staley Mfg. Co.,* 711 F.2d 780, 783 (7th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed. 456 (1984).

◼ The EEOC's authority to investigate under Title VII is quite broad. *Motorola, Inc. v. McLain,* 484 F.2d 1339, 1345–46 (7th Cir.1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974). Section 706(b) authorizes the Commission to investigate all charges of employment discrimination.[8] 42 U.S.C. § 2000e–5(b). Section 709(a) gives the Commission the right of access to relevant records, 42 U.S.C. § 2000e–8(a), and section 710 allows the Commission to have its subpoenas enforced in court, *id.* § 2000e–9. Tempel Steel contends that this authority does not extend to the investigation of a charge that is allegedly time-barred under section 706(e). However, the EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit. *See Staley,* 711 F.2d at 788; *see also EEOC v. Children's Hosp. Medical Center,* 719 F.2d 1426, 1429–30 (9th Cir.1983) (en banc). If every possible defense, procedural or substantive, were litigated at the subpoena enforcement stage, administrative investigations obviously would be subjected to great delay.

◼ We therefore join those courts that have determined that a timeliness defense may not be raised to block enforcement of an EEOC subpoena. *See EEOC v. Roadway Express, Inc.,* 750 F.2d 40 (6th Cir.1984); *EEOC v. South Carolina Nat'l Bank,* 562 F.2d 329 (4th Cir.1977); *EEOC v. General Tire & Rubber Co.,* 22 Fair Empl.Prac.Cas. (BNA) 574 (N.D.Ohio 1980); *cf. Hamilton v. NLRB,* 177 F.2d 676 (9th Cir.1949). While an exception might exist if the party under investigation were able to establish that there was clearly no factual or legal support for the agency's preliminary determination to investigate, *see Roadway Express,* 750 F.2d at 42, this is not such a case.[9] Accordingly, the order of

---

7. *See EEOC v. Shamrock Optical Co.,* 788 F.2d 491, 493–94 (8th Cir.1986); *Thomas v. Florida Power & Light Co.,* 764 F.2d 768, 771 (11th Cir.1985); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1211 (3d Cir.1984); *Smith v. Oral Roberts Evangelistic Ass'n, Inc.,* 731 F.2d 684, 687–90 (10th Cir.1984); *Jones v. Airco Carbide Chem. Co.,* 691 F.2d 1200, 1201–04 (6th Cir.1982).

8. Although the Supreme Court has held that the EEOC has the authority to investigate only charges that meet the requirements of section 706(b), *see EEOC v. Shell Oil Co.,* 466 U.S. 54, 65, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984),

Tempel Steel does not contend that Austin's charge failed to meet those requirements.

9. We find Tempel Steel's specific objections to the form and scope of the subpoena to be without merit. Tempel Steel asserts that the subpoena impermissibly requires it to complete a "complicated work force analysis," requires production of "irrelevant" information concerning the sex and national origin of applicants and newly hired employees, and is indefinite. The subpoena is not defective, however, simply because it requires Tempel Steel to compile information concerning its work force. *See Bay Shipbuilding,* 668 F.2d at 313. Moreover, the requested information regarding the sex and

the district court enforcing the subpoena is affirmed.

national origin of applicants and newly hired employees is not irrelevant even though Austin's charge alleges only race discrimination. *See id.* at 311 n. 8; *EEOC v. University of New Mexico,*

504 F.2d 1296, 1299–02 (10th Cir.1974). Finally, we conclude that the subpoena is sufficiently definite to require enforcement.