**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Applicant,

v.

**SCHWAN'S HOME SERVICE,**
Respondent.

**Civil No. 09–mc–84 (JRT/JSM).**

United States District Court,
D. Minnesota.

June 30, 2010.

Nicholas J. Pladson, Equal Employment Opportunity Commission, Minneapolis, MN, for applicant.

James B. Sherman, Wessels Sherman Joerg Liszka Laverty Seneczko P.C., Minneapolis, MN, for respondent.

## MEMORANDUM OPINION AND ORDER

JOHN R. TUNHEIM, District Judge.

This matter is before the Court on an Application for Order to Show Cause Why a Subpoena Should Not Be Enforced (Docket No. 1) filed by the Equal Opportunity Employment Commission ("EEOC"), an order issued by United States Magistrate Judge Janie S. Mayeron granting the EEOC's application (Docket No. 15), and the objections of Schwan's Home Service ("Schwan's") to the order (Docket No. 18). For the reasons set forth below, the Court overrules the objections, adopts the Magistrate Judge's order, and grants the application.

## BACKGROUND

Schwan's "is the largest branded home delivery frozen food company in the United States." (Sherman letter at 3, Rowe Decl. Ex. 2, Docket No. 4.) Schwan's hired Kim Milliren on or about November 16, 2006. (*See* Charge at 1, Rowe Decl. Ex. 1, Docket No. 4.) Schwan's hired Milliren for the position of Location General Manager ("General Manager," or "LGM"), contingent upon Milliren's successful completion of the General Manager Development Program ("GMDP"). (*Id.;* Sherman Letter at 3–4, Rowe Decl. Ex. 2, Docket No. 4.) According to Schwan's, "[t]he GMDP is a 16 week training program that prepares candidates to become" LGMs. (Sherman Letter at 2 n. 2, Rowe Decl. Ex. 2, Docket No. 4.) An LGM "is responsible for managing all aspects of a depot, a stand-alone profit center." (*Id.*) Each LGM supervises up to twenty-five employees, including a Route Sales Supervisor, a facility supervisor, Material Handlers, and Customer Service Managers. (*Id.*) Customer Service Managers sell Schwan's "frozen food products to customers in their home." (*Id.*)

Milliren began working at Schwan's as a trainee in the GMDP on or about February 19, 2007. (*Id.* at 3.) On or about March 27, 2007, Jeffery Moffis, an LGM, addressed Milliren as "woman" twice. (Charge at 1, Rowe Decl. Ex. 1, Docket No. 4.) At some point prior to March 28, 2007, George Van Overbecke, a District Manager, emailed some offensive material to LGMs. (*Id.*) On or about March 28, 2007, when Milliren told Moffis that she was not comfortable with Moffis and other LGMs joking about the offensive material,

Moffis laughed at Milliren. (*Id.*) On or about April 5, 2007, Milliren complained about the emails—first to Jim Pettry, a Senior Learning Solutions Specialist, and then to her direct supervisor, Sue Beary, who is a Vice President for Business Initiatives. (*Id.;* Sherman Letter at 4–5, Rowe Decl. Ex. 2, Docket No. 4.)

On or about April 27, 2007, Mike Wells, Director of Training, told Milliren that she was not demonstrating leadership skills, that she would not graduate from the GMDP, and that the best position Schwan's could offer Milliren upon completion of the GMDP was a job as Customer Service Manager. (Charge at 1, Rowe Decl. Ex. 1, Docket No. 4.) On May 4, 2007, Milliren resigned. (*Id.*)

On June 19, 2007, Milliren filed a charge of discrimination with the EEOC. (*Id.*) The charge alleges that Schwan's discriminated against Milliren on the basis of her "sex, female, and in retaliation for having complained about harassment based on sex." (*Id.*)

On July 3, 2007, the EEOC served Schwan's with a Notice of Charge of Discrimination. (Rowe Decl. ¶ 4(b), Docket No. 4.) On August 10, 2007, counsel for Schwan's provided the EEOC with a letter of position in response to the Charge. (Sherman Letter, Rowe Decl. Ex. 2, Docket No. 4.) In that letter, Schwan's stated:

> During this same training period [Schwan's] informed two other male trainees from other training classes that they would not graduate from the training program. One male, . . . an internal trainee, continued his training in the field. Another male . . . continued employment and was placed as an LGM three months later. Additionally, three other females . . . each successfully graduated from the same GMDP pro-

> gram [and were placed as LGMs in 2005, 2006, and 2007].

(*Id.* at 5.)

On November 29, 2007, the EEOC served Schwan's with a request for information, and Schwan's responded on December 13, 2007. (Rowe Decl. ¶ 4(d)-(e), Docket No. 4.) The EEOC requested a list of employees who attended every GMDP from January 1, 2006, to the present, broken down to show the name, gender, and date of hire of each employee who successfully completed the GMDP and of each employee who did not successfully complete the GMDP during that period. (Czarnecki Letter at 2, Rowe Decl. Ex. 3, Docket No. 4.) In response, Schwan's provided general information as to approximately sixty employees who participated in the GMDP during 2007, and provided the name and gender of each of the eight people who failed to complete the GMDP during that year. (Sherman Letter, Rowe Decl. Ex. 4, Docket No. 4.) Schwan's stated that Milliren was the only female who failed to complete the GMDP during 2007, and added that another female "began in the same GMDP class as Milliren, on February 19, 2007, and successfully completed the course." (*Id.* at 2.) Schwan's did not provide information as to the total number of females who participated in the GMDP in 2006 or 2007. (*Id.* at 1–2.)

On December 19, 2007, the EEOC requested additional information. The EEOC requested a list of all persons who successfully completed the GMDP from January 1, 2006, to the present, including the name, sex, date of hire, date of completion, current employment status, and contact information for each participant. (Czarnecki Letter at 2, Rowe Decl. Ex. 5, Docket No. 4.) The EEOC requested similar information for all persons for whom Schwan's extended the term of GMDP training during that period, and the reason

for the extension. (*Id.* at 3.) The EEOC requested the name, gender, and date of hire of each General Manager currently employed by Schwan's. (*Id.* at 2.) The EEOC also requested that Schwan's "[e]xplain how persons are selected for the [GMDP] and provide copies of all documents regarding the selection process." (*Id.*) The EEOC requested information specific to Milliren, including her personnel file, contact information for her mentors, all feedback regarding her performance, and the investigation that Schwan's conducted regarding Milliren's complaints. (*Id.* at 2–3.) The EEOC also requested information about two additional allegations:

9. Charging party alleges that during her training in Boise, ID, a female applicant was denied a position by Jeff Moffis because she had children. State whether Mr. Moffis and the charging party interviewed candidates for a Customer Service Manager position and provide documentation regarding those interviews.

10. Charging party states that she complained to Jeff Moffis that a calendar containing a woman in a bikini was in the interview room. State whether this occurred and Mr. Moffis' response.

(*Id.* at 3.)

After Schwan's failed to respond to this request, the EEOC issued a subpoena *duces tecum* directing Schwan's to produce the requested information on or before May 20, 2008. (Subpoena No. CHMN–A8–058, Rowe Decl. Ex. 7, Docket No. 4.) On May 14, 2008, Schwan's responded by submitting to the EEOC a petition to revoke or modify the subpoena. (Sherman Letter, Rowe Decl. Ex. 8, Docket No. 4.) Schwan's stated that it objected to and did not intend to comply with certain requests for information, including the name, gender, and date of hire of each General Man-

ager; documents relating to the process of selecting trainees for the GMDP; information about all persons who successfully completed the GMDP from 2006 to the present; information about extended training; information about individuals Jeff Moffis interviewed in Boise, Idaho for the position of Customer Service Manager; and information about Milliren's mentors. (*Id.*)

On July 28, 2008, the EEOC modified two of the requests, rejected the petition, and ordered Schwan's to comply with the subpoena within ten days. (Rowe Decl. Ex. 9, Docket No. 4.) On August 12, 2008, Schwan's provided some documents in response to the subpoena, but restated its objections to other requests. (Sherman Letter, Rowe Decl. Ex. 10.)

On February 4, 2009, Milliren filed an Amended Charge with the EEOC. (Am. Charge, Rowe Decl. Ex. 11, Docket No. 4.) In the Amended Charge, Milliren added the following statement: "It is also my belief that the Respondent discriminates against females, as a class, in regard to its General Manager Development Program in violation of Title VII of the Civil Rights Act of 1964, as amended." (*Id.*) On the same day, the EEOC served Schwan's with a Notice of the Amended Charge of Discrimination. (Rowe Decl. ¶ 4(n), Docket No. 4.) On February 18, 2009, in response to the Amended Charge, Schwan's argued that the amendment was untimely. (Sherman Letter, Rowe Decl. Ex. 12, Docket No. 4.)

On February 20, 2009, the EEOC served Schwan's with Subpoena No. CHMN–A10–012 (the "February 2009 Subpoena"), the subpoena *duces tecum* that is the subject of the instant application for order to show cause. (Subpoena No. CHMN–A10–012, Rowe Decl. Ex. 13, Docket No. 4.) The February 2009 Subpoena directs Schwan's

to provide certain documents to the EEOC on or before March 9, 2009:

1. Provide a list of General Managers currently employed with the respondent. Include for each: the employee's name, gender and date of hire.

[2.] Provide all documents related to how persons are selected for the GM Development Program[.]

3. Provide a list of all persons who successfully completed the GM Development program from 1/1/06 to the present by name, gender, date of hire, date of completion of program, current employment status, and last known home address and telephone number.

(*Id.* at 2.) These three requests are identical to three of the requests contained in the original subpoena. (*See* Subpoena No. CHMN–A8–058, Rowe Decl. Ex. 7, Docket No. 4.)

On February 27, 2009, Schwan's filed a petition to revoke or modify the February 2009 Subpoena. (Resp't's Pet. to Revoke or, in the Alternative, Modify Subpoena, Rowe Decl. Ex. 14, Docket No. 4.) Schwan's argued that the subpoena was unenforceable because it sought information beyond the EEOC's investigative authority, that the subpoena was vague, overly broad, and unduly burdensome, and that the information sought was irrelevant to the investigation of the underlying charge. (*Id.* at 4.)

On August 4, 2009, the EEOC served Schwan's with a determination that modified the subpoena to add geographic limitations to the information requested:

1. Provide a list of General Managers currently employed with the respondent nationwide. Include for each: the employee's name, gender and date of hire.

2. Provide all documents related to how persons are selected for the GM Development Program nationwide.

3. Provide a nationwide list of all persons who successfully completed the GM Development program from 1/1/06 to the present by name, gender[,] date[ ] of hire, date of completion of program, current employment status, and last known home address and telephone number.

(Determination on Pet. to Revoke or Modify Subpoena at 7–8, Rowe Decl. Ex. 15, Docket No. 4.) In all other respects, the EEOC's determination concluded that Schwan's objections were without merit and ordered Schwan's to comply with the subpoena, as modified, by August 10, 2009. (*See id.* at 10–11.)

On August 10, 2009, Schwan's responded to the EEOC's determination by stating that the allotted time was "insufficient even to intelligently interpret the Determination, much less respond to it." (Sherman Letter at 1, Rowe Decl. Ex. 16, Docket No. 4.) Schwan's did not ask for an extension, however. Instead, it conceded "that the next step in this process requires the involvement of a federal district court judge." (*Id.*)

On October 5, 2009, the EEOC filed with this Court an Application for Order to Show Cause Why a Subpoena Should Not Be Enforced. (Application for Order to Show Cause, Docket No. 1.) The application states that it "is an action for enforcement of a subpoena *duces tecum,* pursuant to Section 710 of Title VII of the Civil Rights Act of 1964 ('Title VII'), 42 U.S.C. § 2000e–9." (*Id.* ¶ 1.) The EEOC requested that the Court issue an order directing Schwan's to appear before the Court and show cause why an order should not issue directing Schwan's to comply with the February 2009 Subpoena. (*Id.* at 2.) It further requested that upon return of the order to show cause, the Court issue an order directing Schwan's to comply with the February 2009 Subpoena. (*Id.*)

On October 14, 2009, the Magistrate Judge issued an order scheduling a show cause hearing for November 4, 2009. (Docket No. 8.) At the hearing, counsel for the EEOC confirmed that Milliren filed the Amended Charge, adding the class-wide allegation, based in part on information she received from the EEOC. (Tr. at 13–14, Docket No. 17.) Counsel explained that based on information that Schwan's provided in response to the first subpoena, "it became clear to [the EEOC] that there's a good reason to believe ... that more investigation into the existence of a class is needed." (*Id.* at 15.) Counsel then "was informed that [Milliren] was interested in amending her charge." (*Id.*) The impetus for Milliren amending the charge was both the information the EEOC had developed during its investigation, as well as "Milliren's information ... that she told about her experiences there." (*Id.* at 16.) The EEOC put this information together "and said there's a need to examine whether this was replicated elsewhere." (*Id.*) As a result, the EEOC served Schwan's with the Amended Charge and issued a new subpoena. (*Id.* at 15.)

On March 8, 2010, the Magistrate Judge issued an order granting the EEOC's Application for Order to Show Cause, finding that Schwan's had not shown cause for its failure to comply with the February 2009 Subpoena, and directing Schwan's to comply with the subpoena in its entirety no later than March 29, 2010. 692 F.Supp.2d 1070 (D.Minn.2010). On March 22, 2010, Schwan's filed objections to the Magistrate Judge's order, (Docket No. 18), and filed an emergency motion to stay the March 8 order pending the Court's ruling on Schwan's objections. (Docket No. 19.) On March 23, 2010, the parties filed a stipulation for stay, (Docket No. 23), and on March 26, 2010, the Court issued an order staying the March 8 order pending a ruling on the objections. (Docket No. 24.)

## ANALYSIS

## I. STANDARD OF REVIEW

### A. Standard for Reviewing the Subpoena

■ "The EEOC is required to investigate a charge of discrimination to determine whether there is reasonable cause to believe that the employer engaged in an unlawful employment practice, and may issue subpoenas in connection with its investigation." *EEOC v. Technocrest Sys., Inc.*, 448 F.3d 1035, 1038 (8th Cir.2006) (citations omitted). "[T]he EEOC can apply to a federal district court to enforce such subpoenas." *EEOC v. County of Hennepin*, 623 F.Supp. 29, 31 (D.Minn. 1985).

■ These "[a]dministrative subpoena enforcement actions are summary proceedings and involve limited judicial review." *EEOC v. United Parcel Serv.*, No. 06–MC–42, 2006 WL 3712941, at *2 (D.Minn. Sept. 1, 2006). In such proceedings, the EEOC "must demonstrate the following: (1) that the subpoena is within the agency's authority; (2) that the agency has satisfied its own procedural requirements; and (3) that the information sought is relevant to its investigation." *Id.*; *EEOC v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 930 (8th Cir.1985) ("The showing of reasonable cause required to support an application for enforcement of a subpoena duces tecum is satisfied ... by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry." (internal quotation marks omitted; alteration in original)). If the EEOC makes such a showing, the court will enforce the subpoena "unless the subpoenaed party demonstrates that judicial enforcement of the subpoena would amount to an abuse of the court's process" or would create an undue

burden on the subpoenaed party. *Technocrest Sys.*, 448 F.3d at 1039 (internal quotation marks omitted); *Peat, Marwick,* 775 F.2d at 930–31; *United Parcel Serv.*, 2006 WL 3712941, at *2. "[E]vidence of bad faith" may support a finding that the EEOC has abused the court's process. *See Peat, Marwick,* 775 F.2d at 931.

## B. Standard for Reviewing the Magistrate Judge's Order

■ The Court concludes that an application to enforce an administrative subpoena *duces tecum,* where there is no pending underlying action before the Court, is generally a dispositive matter, and therefore, when a Magistrate Judge considers such an application, the district court reviews the Magistrate Judge's determinations *de novo.*

Congress set forth the jurisdiction and powers of United States Magistrate Judges in the Federal Magistrates Act, as amended in 1976 and as codified in relevant part at 28 U.S.C. § 636. Federal Magistrates Act, tit. I, § 101, Pub. L. No. 90–578, 82 Stat. 1108, 1113–14 (1968); Pub. L. No. 94–577, 90 Stat. 2729 (1976). A Magistrate Judge has the power

> to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A). With respect to the eight matters excepted from the Magistrate Judge's authority in § 636(b)(1)(A), the district court may "designate a magistrate judge to conduct hearings ... and to submit to a judge of the court proposed

findings of fact and recommendations for the disposition, by a judge of the court," of such matters. *Id.* § 636(b)(1)(B). The district court reviews those proposed findings and recommendations *de novo,* while it reviews a Magistrate Judge's rulings on other pretrial matters for clear error. *See* Fed.R.Civ.P. 72(b)(3); *id.* R. 72(a).

Federal Rule of Civil Procedure 72 "is designed to implement the legislative mandate of Section 636(b)(1)." Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 3068, at 321 (1997). Rule 72(a) governs "Nondispositive Matters," and Rule 72(b) governs "Dispositive Motions and Prisoner Petitions." Fed.R.Civ.P. 72. Wright and Miller explain how the two subsections of Rule 72 mirror and clarify the distinction contained in § 636(b)(1)(A):

> As does the statute, the Rule divides the magistrate judge's pretrial authority into two categories. In the first category, governed by Rule 72(a), are pretrial matters "not dispositive of a [party's] claim or defense...." This provision implements the legislative mandate of Section 636(b)(1)(A). Rule 72(b) implements the category of pretrial activity authorized by Section 636(b)(1)(B), including matters "dispositive of a claim o[r] defense ... or a prisoner petition challenging the conditions of confinement."

Wright & Miller § 3068, at 321–22. In distinguishing between matters that are "dispositive of a claim or defense," and the other "pretrial matter[s]" that are "nondispositive," Rule 72 "does not merely reiterate the statutory language, but is meant to be a straightforward guide to the statute's implementation." *Id.* at 323; Fed.R.Civ.P. 72(a)-(b). "The rule's deviation from the language of the statute is not merely stylistic[.]" Wright & Miller § 3068.2, at 333. The rule's distinction

between dispositive and nondispositive matters "is meant to reflect the legislative history of the 1976 amendments [to the Magistrates Act], the considerations underlying the differing standards of review, and the body of case law that developed in practice under the provisions of Section 636(b)(1)." *Id.* The distinction between dispositive and nondispositive matters also has practical implications. "Any pretrial matter properly referred to a magistrate judge must be categorized under Rule 72 as either 'dispositive' or 'nondispositive' for purposes of the standard of review to be exercised by the district judge." *Id.* at 332.

The legislative history of the 1976 amendments demonstrates why the Court must look beyond "the checklist of motions contained in Section 636(b)(1)(A)" to examine "the underlying considerations of the dispositive-nondispositive dichotomy" in determining the appropriate standard of review under Rule 72 and § 636(b). *Id.* at 334. As Wright and Miller explain:

At all stages in the consideration of the 1976 amendments to the statute, proponents of the revision of Section 636(b) divided the pretrial activities of magistrates into two groups. As originally proposed by the Judicial Conference and by Senator Quentin Burdick in the United States Senate, pretrial matters were divided into two categories: dispositive and nondispositive. A magistrate could hear and determine nondispositive matters but could only make recommendations to the judge on dispositive matters. As ultimately enacted by Congress, the dichotomy was essentially the same as originally proposed, but the general "dispositive" category was replaced with the list of eight pretrial motions. The House and Senate Committee Reports accompanying the Act, however, consistently referred to the specified motions as "dispositive."

Constitutional concerns explain the statutory distinction between types of pretrial matters. Motions thought "dispositive" of the action warrant particularized objection procedures and a higher standard of review because of the possible constitutional objection that only an article III judge may ultimately determine the litigation. Other motions and matters which can arise in the preliminary processing of . . . a civil case do not warrant this treatment; in those nondispositive cases a magistrate's determination is intended to be "final" unless a judge of the court exercises his ultimate authority to reconsider the magistrate's determination. Thus, in all pretrial matters the magistrate acts under the direct supervision of the district judge, but in "dispositive" matters Congress chose to provide a framework for objection and substantial review so as to avoid any constitutional concerns. Not surprisingly, the Supreme Court itself adopted the "dispositive" label to explain the statutory distinction well before rule 72 was adopted.

*Id.* at 333–34 (footnotes and some internal quotation marks omitted). Under Rule 72, courts therefore do not limit their application of the *de novo* "[r]eview under subsection (b)(1)(B) . . . to cases in which one of the eight exceptional motions was involved." *Id.* at 336. "The rule's approach permits the courts to reach commonsense decisions rather than becoming mired in a game of labels." *Id.* at 338. In some circumstances, courts must "go beyond the label and consider the impact of the action taken on the case to determine whether it is dispositive." *Id.* at 342. Courts typically consider "the impact on the merits of the case in deciding whether [the motion] should be characterized as dispositive." *Id.* at 345. As Judge Leval recently observed,

Because many of the powers withheld from magistrate judges by

§ 636(b)(1)(A) involve the determination of the suit or of a claim or of a party's right to maintain the claim in the action, courts have generally concluded that other rulings which would have the same effect of disposing of a party's claim (or of a defense) were also intended by Congress to be excluded from the powers of magistrate judges.

*Kiobel v. Millson,* 592 F.3d 78, 92 (2d Cir.2010) (Leval, J., concurring). For example,

courts have decided that, in addition to the powers explicitly withheld from magistrate judges by § 636(b)(1)(A), the power of magistrate judges to "determine" does not extend to rulings that remand a case to state court, that enter default judgment, that deny a motion to certify a district court order for interlocutory appeal, that deny enforcement of an agency subpoena, and that deny a motion to proceed *in forma pauperis.*

*Id.* (citations omitted).

The District of Minnesota has not consistently treated actions to enforce an administrative subpoena *duces tecum* as dispositive or as nondispositive. *Compare NLRB v. Fortune Bay Resort Casino,* No. 08–65, 688 F.Supp.2d 858 (D.Minn.2010) (dispositive), *with United Parcel Serv.,* 2006 WL 3712941, at *1 (nondispositive); *EEOC v. County of Hennepin,* No. MISC 4–84–32, 1984 WL 1126 (D.Minn. Nov. 8, 1984) (same); *see also County of Hennepin,* 623 F.Supp. at 31. Many courts, however, treat proceedings to enforce administrative subpoenas as dispositive motions. *See, e.g., Hartford Fire Ins. Co. v. Transgroup Express, Inc.,* No. 09–C–3473, 2009 WL 2916832, at *1 (N.D.Ill. Sept. 1, 2009); *EEOC v. Dolgencorp.,* No. 07–C–6672, 2008 WL 4542973, at *2 (N.D.Ill. Apr. 15, 2008); *In re Admin. Subpoena Blue Cross Blue Shield of Mass.,* 400 F.Supp.2d 386, 388–89 (D.Mass.2005); *In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98–19,* 182 F.R.D. 196, 201–02 (E.D.Va.1998); *cf. Ross v. Pioneer Life Ins. Co.,* No. 07–MC–18, 2007 WL 4150957, at *3–4 (N.D.Okla. Nov. 16, 2007) (concluding that a motion to quash an administrative subpoena and a motion for a protective order are dispositive motions).

The Court finds that when an agency initiates a civil action by filing an application for order to show cause why a subpoena *duces tecum* should not be enforced, and when there is no related civil action pending, the Court's ruling on the application will resolve the entire action, and therefore resolution of such an application is a dispositive matter. Other courts that have considered similar actions have also concluded that they are dispositive matters, and the Court finds their reasoning persuasive.

Under circumstances similar to those presented here, the United States District Court for the Northern District of Illinois concluded that an EEOC petition for an order to show cause why an administrative subpoena should not be enforced was a dispositive matter. *Dolgencorp.,* 2008 WL 4542973, at *1–2. The court observed that "[a] motion to enforce a subpoena is not always considered a dispositive motion for purposes of Federal Rule of Civil Procedure 72," but concluded that it was a dispositive motion in the context of the EEOC's petition for an order to show cause "[b]ecause the Magistrate's order would dispose of the entire matter at issue in this case." *Id.* at *2. The court therefore treated the Magistrate Judge's order as a report and recommendation and reviewed it *de novo. Id.*

In *United States v. Miller,* the Internal Revenue Service had obtained a show cause order from the district court, directing a taxpayer to appear and produce specified documents for IRS examination

pursuant to an IRS summons. 609 F.2d 336, 338 (8th Cir.1979) (per curiam). The taxpayer then filed a motion to quash the summons in that action. *Id.* The Eighth Circuit declined to resolve whether the magistrate judge had authority to consider the motion to quash as a referred dispositive motion under § 636(b)(1)(B), but concluded nonetheless that the district court was required to undertake a *de novo* review of the magistrate judge's report and recommendation. *Id.* at 339–40; *see also Transgroup Express,* 2009 WL 2916832, at *1 ("A motion to quash a subpoena is usually a nondispositive matter; but, where, as here, the decision would dispose of the entire matter at issue in this case, the order is more properly treated as subject to *de novo* review.").

In *NLRB v. Frazier,* the Third Circuit recognized that the National Labor Relations Board's application to the district court for an order to compel an individual to obey a subpoena to testify in an administrative proceeding before the Board "was not part of a larger case before the court." 966 F.2d 812, 814–15, 817 (3d Cir.1992). The court acknowledged that "a motion to enforce a subpoena arising in a civil action would be a routine matter which a magistrate judge could dispose of as a nondispositive motion," but held that:

> The proceeding to enforce an agency subpoena is like a motion to dismiss; once the court grants a motion to dismiss or compels compliance with a subpoena, the court disposes of the entire case before it.... Yet in a proceeding to enforce a subpoena, the case before the district court is over regardless of which way the court rules. Once the court grants or quashes the agency subpoena, it determines with finality the duties of the parties. The district court proceeding is admittedly collateral to the Board's pending administrative proceeding, but the question of whether or not to enforce the subpoena is the only mat-

ter before the court. The court's decision seals with finality the district court proceeding and is subject to appellate review.

*Id.* at 817–18. The court added that the application to enforce the administrative subpoena was a dispositive matter because resolution of the application "was not a pretrial determination of a motion collateral to the main proceeding before the district court, but a final decision which disposed entirely of the Board's business before the court." *Id.* at 818; *see also NLRB v. Cable Car Advertisers, Inc.,* 319 F.Supp.2d 991, 996 (N.D.Cal.2004) (concluding that the "subpoena enforcement proceeding" in the district court is a dispositive matter because it "is not ancillary to the contempt proceeding" in the Ninth Circuit, and because "[w]hen this motion is decided, the case will effectively be over"); *cf. Aluminum Co. of Am. v. EPA,* 663 F.2d 499, 501 (4th Cir.1981) (stating in passing that a motion to quash an administrative search warrant was dispositive because it "set forth all of the relief requested").

One additional reason supporting the conclusion that matters involving enforcement of administrative subpoenas are dispositive is the fact that courts generally treat orders in such matters as final and appealable. *See Reich v. Nat'l Eng'g & Contracting Co.,* 13 F.3d 93, 96 (4th Cir. 1993); *In re Oral Testimony,* 182 F.R.D. at 201–02.

Because the EEOC's application for order to show cause why a subpoena should not be enforced is a dispositive matter, the Court construes the Magistrate Judge's order as a report and recommendation and reviews *de novo* those portions of the order to which Schwan's objects. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b); *see United States v. Mueller,* 930 F.2d 10, 12 (8th Cir.1991) (per curiam); *cf. In re Oral Testimony,* 182 F.R.D. at 202.

## II. OBJECTIONS TO THE MARCH 8, 2010 ORDER

Schwan's raises several objections to the Magistrate Judge's order. First, Schwan's argues that the Magistrate Judge erroneously concluded that the subpoena enforcement action was not the proper forum for determining whether the Amended Charge was valid. (Resp't's Objections at 3–4, Docket No. 18.) Second, Schwan's argues that the Magistrate Judge erred in reaching the alternative conclusion that the Amended Charge was valid. (*Id.* at 4.) Schwan's argues that the Amended Charge is invalid because it is not based on Milliren's personal knowledge, because it is untimely, and because Milliren lacks standing to pursue the class allegations set forth in the Amended Charge. (*Id.* at 4–10.) Third, Schwan's argues that the information sought is not relevant to the charge under investigation. (*Id.* at 10–13.) The Court addresses these objections in turn.

### A. Validity of the Amended Charge

■ In *EEOC v. Shell Oil Co.*, the Supreme Court held that a valid charge is a jurisdictional prerequisite to judicial enforcement of an EEOC administrative subpoena. 466 U.S. 54, 65, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). EEOC regulations require that the charge include "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). Schwan's does not argue that the Amended Charge is procedurally deficient. Instead, it objects to the Amended Charge on other grounds.

### 1. Proper Forum for Assessing the Validity of the Amended Charge

Schwan's argues that the Magistrate Judge "erred in holding that enforcement proceedings [a]re not the proper occasion to address the amended charge's validity." (Resp't's Objections at 4, Docket No. 18.) The Magistrate Judge did not conclude that this subpoena enforcement action is not the proper forum for assessing the validity of the Amended Charge. Rather, she concluded that the subpoena enforcement action is not the proper forum for the Court to evaluate whether the Amended Charge is timely and relates back to the original charge, or to determine whether Milliren has standing to assert class claims. (Order, 692 F.Supp.2d at 1079.)

■ The Magistrate Judge correctly concluded that a subpoena enforcement action is not the proper forum for assessing the merits of defenses such as relation back and standing, even where, as here, Schwan's characterizes such defenses as attacks on the "validity" of the Amended Charge. "[T]he EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit. If every possible defense, procedural or substantive, were litigated at the subpoena enforcement stage, administrative investigations obviously would be subjected to great delay." *EEOC v. Tempel Steel Co.,* 814 F.2d 482, 485 (7th Cir.1987) (citations omitted). A subpoena enforcement "proceeding is not the proper time to litigate the merits of a claim, either procedurally or substantively." *EEOC v. Roadway Express, Inc.,* 750 F.2d 40, 42 (6th Cir.1984) (per curiam); *see also Peat, Marwick,* 775 F.2d at 930 ("[A] subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute." (internal quotation marks omitted)). "[O]n a motion to enforce the subpoena, the underlying merits of the case are not at issue." *United Parcel Serv.,* 2006 WL 3712941, at *2. Therefore, "the Court disregards any

substantive arguments about the underlying charge." *Id.*

### 2. Milliren's Personal Knowledge

■ When an aggrieved individual files a charge with the EEOC, the charge "shall be in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b). Schwan's argues that the Amended Charge is invalid because it exceeds Milliren's personal knowledge and therefore is not properly verified. (*See* Resp't's Objections at 4–6, Docket No. 18.) Schwan's suggests that the Amended Charge does not satisfy the verification requirement because the EEOC conceded at oral argument before the Magistrate Judge that "the primary basis for the amended charge came from sources outside the charging party." (*Id.* at 4–5.)

The Court rejects Schwan's argument for three reasons. First, the Court determines the validity of a charge based on "the face of the charge, not from extrinsic evidence." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 650 (7th Cir.2002). The Amended Charge, on its face, satisfies the writing and oath requirements. Milliren adds one allegation in the Amended Charge: "It is also my belief that the Respondent discriminates against females, as a class, in regard to its General Manager Development Program in violation of Title VII of the Civil Rights Act of 1964, as amended." (Am. Charge, Rowe Decl. Ex. 11, Docket No. 14.) On January 31, 2009, Milliren signed the Amended Charge, "declar[ing] under penalty of perjury that the above is true and correct." (*Id.*) The Amended Charge therefore complies with the writing and oath requirements, and the Court declines to engage in any further factual inquiry to verify the allegations in the Amended Charge. Second, even assuming that some additional inquiry might be proper under some circumstances, the Court has no reason to question the veracity of the class allegation in this proceeding. The allegation at issue states Milliren's belief. Schwan's has no basis to dispute that Milliren believes that Schwan's "discriminates against females, as a class, in regard to" the GMDP. Third, counsel for the EEOC confirmed at oral argument that Milliren informed the EEOC of her desire to amend her charge, and that the impetus for amending the charge was both the information the EEOC had developed during its investigation and Milliren's own information based on her own experiences at Schwan's. (Tr. at 15–16, Docket No. 17.) The class allegation therefore is based, at least in part, on information within Milliren's personal knowledge.

### 3. Timeliness of the Amended Charge

■ "[A] timeliness defense may not be raised to block enforcement of an EEOC subpoena." *Tempel Steel*, 814 F.2d at 485; *see also EEOC v. S.C. Nat'l Bank*, 562 F.2d 329, 332 (4th Cir.1977). A court may refuse to enforce an administrative subpoena on timeliness grounds "[o]nly if the charge . . . shows on its face that it is untimely, is concededly out of time, or [untimeliness] [i]s otherwise apparent." *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 83 (4th Cir.1995) (internal quotation marks omitted).

Schwan's does not dispute that the original charge was timely, but instead argues that the Amended Charge "is untimely on its face" because Milliren did not file the Amended Charge until February 4, 2009, more than 300 days after she terminated her employment. (Resp't's Objections at 6, Docket No. 18.) EEOC regulations state that "[a] charge may be amended . . . to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b). These "amendments and amendments alleging additional acts which constitute unlawful employment practices **related to or growing out of** the subject matter of the original charge will relate back to the date the

charge was first received." *Id.* (emphases added). Because EEOC regulations allow for the possibility that the Amended Charge may relate back to the date Milliren filed the original charge, the Court cannot find that the Amended Charge is untimely on its face. The Court further finds that Schwan's has failed to establish that the Amended Charge is concededly out of time, or that the untimeliness is otherwise apparent.

The Magistrate Judge found that "[e]ven if this Court were to conclude that this subpoena enforcement action was a proper forum for Schwan's to challenge the timeliness of the Amended Charge, ... the Amended Charge relates back to the original charge and is therefore ... timely." (Order, 692 F.Supp.2d at 1080.) The Magistrate Judge concluded that the class allegation added in the Amended Charge "constitutes unlawful employment practices related to or growing out of the subject matter of the original charge," and therefore the allegation relates back to the date the EEOC filed the initial charge. (*Id.* at 1081–82.)

The Court declines to reach the merits of Schwan's' argument that the class allegation in the Amended Charge does not relate back to the date of the original charge. The Court rejects as premature that portion of the Magistrate Judge's order that concludes that the relation back standard is satisfied. The parties may address whether the class allegations "relate[ ] to or grow[ ] out of the subject matter of the original charge" if and when the EEOC or Milliren files a complaint against Schwan's that makes such class allegations.

### 4. Standing to Pursue Class Claims

Schwan's argues that "Milliren does not have standing to pursue a class action based upon selection into the GMDP" because Schwan's selected Milliren to participate in the program. (Resp't's Objections at 8, Docket No. 18.) The Magistrate Judge concluded that Schwan's standing argument is "meritless," (Order, 692 F.Supp.2d at 1082–83), and the Court agrees. As discussed above, a subpoena enforcement "proceeding is not the proper time to litigate the merits of a claim, either procedurally or substantively." *Roadway Express,* 750 F.2d at 42. In all of the cases Schwan's cites in support of its argument, the defendant raised the standing argument after the plaintiff filed a complaint, rather than during a preliminary, pre-complaint administrative subpoena enforcement action. *See Talley v. Leo J. Shapiro & Assocs., Inc.,* 713 F.Supp. 254, 256 (N.D.Ill.1989); *Meyers v. Ace Hardware, Inc.,* 95 F.R.D. 145, 148 (N.D.Ohio 1982); *Resnick v. Am. Dental Ass'n,* 90 F.R.D. 530, 533 (N.D.Ill.1981); *Fields v. Village of Skokie,* 502 F.Supp. 456, 458 (N.D.Ill.1980); *Badillo v. Cent. Steel & Wire Co.,* 495 F.Supp. 299, 301 (N.D.Ill. 1980); *Nat'l Org. for Women, Inc. v. Minn. Mining & Mfg. Co.,* No. 4–74 Civ. 555, 1976 WL 734, at *1 (D.Minn. Sept. 8, 1976). The absence of class standing is a defense that Schwan's may raise if and when the EEOC or Milliren files a complaint against Schwan's that makes allegations based on Milliren's presumed standing to assert class claims.

In summary, the Court finds that the EEOC has demonstrated that the subpoena is within the EEOC's authority and that it satisfies the EEOC's procedural requirements. The Court finds that the Amended Charge is properly verified, and rejects Schwan's' timeliness and class standing arguments as premature.

### B. Relevance

"The primary responsibility for enforcing the requirements of Title VII rests with the EEOC. In order to effectuate the purposes of the Civil Rights Act, therefore,

the statutory provisions authorizing EEOC investigations must be read to give the EEOC broad investigatory power." *Emerson Elec. Co. v. Schlesinger,* 609 F.2d 898, 905 (8th Cir.1979). Those broad investigatory powers include the power to request information by means of an administrative subpoena, but a court considering a challenge to an administrative subpoena must "determin[e] whether the subpoenaed information is material and relevant to the investigation of a potential violation" of Title VII. *EEOC v. Chrysler Corp.,* 567 F.2d 754, 755 (8th Cir.1977).

▆▆▆▆ "The standard of relevancy during an EEOC investigation is broad." *United Parcel Serv.,* 2006 WL 3712941, at *3. The EEOC is entitled by statute to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a). The EEOC does not need to establish reasonable cause for finding a violation of Title VII in order to issue a valid subpoena. *Chrysler Corp.,* 567 F.2d at 755. Instead, "it is the function of such investigative subpoenas to establish whether reasonable cause to bring a discrimination charge exists." *Id.* "Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the [EEOC] access to virtually any material that might cast light on the allegations against an employer." *Shell Oil,* 466 U.S. at 68–69, 104 S.Ct. 1621; *see Technocrest Sys.,* 448 F.3d at 1038.

In the February 2009 Subpoena, as modified, the EEOC requests that Schwan's provide the following information:

1. Provide a list of General Managers currently employed with the respondent nationwide. Include for each:

the employee's name, gender and date of hire.

2. Provide all documents related to how persons are selected for the GM Development Program nationwide.

3. Provide a nationwide list of all persons who successfully completed the GM Development program from 1/1/06 to the present by name, gender[,] date[ ] of hire, date of completion of program, current employment status, and last known home address and telephone number.

(Subpoena No. CHMN–A10–012, Rowe Decl. Ex. 13, Docket No. 4; Determination on Pet. to Revoke or Modify Subpoena at 7–8, Rowe Decl. Ex. 15, Docket No. 4.) At issue is whether this information is relevant to the Amended Charge, which alleges retaliation and discrimination based on sex, and which sets forth the following particulars:

I was hired by the above referenced employer on or about November 16, 2007 [1] to participate in the General Manager Development Program. During my employment, I was harassed, demoted, and informed that I would not graduate from the General Manager Development Program. On May 4, 2007, I was constructively discharged.

On or about March 27, 2007, Jeffery Moffis, Local General Manager, addressed me as "woman" two times. On or about March 28, 2007, Mr. Moffis laughed at me when I told him that I was not comfortable with him and customer service managers joking around about the offensive material that was emailed to local general managers by George VanOverbeke, District Manager. On or about April 5, 2007, I complained to Jim Petry [sic], Facilitator, about the

1. The year appears to be a typographical error. Based on the record, the Court assumes that Schwan's hired Milliren in November 2006.

derogatory emails. On or about April 6, 2007, I complained to my direct supervisor, Sue Bary [sic], Vice President of Business Initiatives. On or about April 27, 2007, Mike Wells, Director of Training, told me that I was not demonstrating leadership skills, that I would not graduate, and that the best position they could offer me upon completion of the program was that of a customer service manager. On May 4, 2007, I resigned.

I believe that I have been discriminated against on the basis of my sex, female, and in retaliation for having complained about harassment based on sex. This is in violation of Title VII of the Civil Rights Act of 1964, as amended.

It is also my belief that the Respondent discriminates against females, as a class, in regard to its General Manager Development Program in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Am. Charge, Rowe Decl. Ex. 11, Docket No. 14.)

Schwan's argues that the information requested in the February 2009 Subpoena is not relevant. In particular, Schwan's argues that

information about the sex of all the company's general managers throughout the country; the selection process for the General Manager Development Program in a case where the Charging Party, Milliren, was selected for the program; and, the identity (and sex) of every GM who successfully completed the program, clearly had no relevance to the initial charge.

(Resp't's Objections at 12, Docket No. 18.)

As an initial matter, the Court notes that the Amended Charge forms the basis for the Court's relevance inquiry. Schwan's premises its arguments on the erroneous assumption that the original charge, rather than the Amended Charge, governs the relevance inquiry. (See id. at 10–12.) Schwan's does not dispute that all three categories of information listed in the February 2009 Subpoena are relevant to the Amended Charge's allegations that Schwan's "discriminates against females, as a class, in regard to" the GMDP. The Court finds that the information the EEOC seeks in the February 2009 Subpoena is relevant to the class allegations in the Amended Charge because such information "might cast light on" those allegations. See Shell Oil, 466 U.S. at 69, 104 S.Ct. 1621.

Moreover, even if the original charge were to govern the Court's relevance inquiry, the information the EEOC seeks in the February 2009 Subpoena would be relevant. Information may be relevant even if it extends beyond the case of the person who filed the charge. "[T]he EEOC may investigate all claims that are 'like or related' to the acts set forth in the charge." United Parcel Serv., 2006 WL 3712941, at *3.

Courts have routinely authorized enforcement of administrative subpoenas that request information that goes beyond information directly tied to the charging party's personal experiences and circumstances. In EEOC v. Technocrest Systems, Inc., for example, the Eighth Circuit concluded that the district court did not abuse its discretion by enforcing the EEOC's request for work history information for all employees, rather than just the six charging parties. 448 F.3d at 1039. The court concluded that information about all employees "might cast light on the allegations" of discrimination against the six charging parties and against the class of Filipino employees named in the charge. Id. (internal quotation marks omitted). The court held that the district court abused its discretion in refusing to enforce the EEOC's request for the per-

sonnel files for **all** employees, concluding that such information was "relevant to a determination of whether [the employer] illegally discriminated on the basis of national origin." *Id.* at 1040.

In *EEOC v. United Parcel Service,* the court found that the EEOC was entitled to information relating to the EEOC's investigation of whether the employer maintained "a blanket exclusionary policy barring applicants and employees with insulin-dependent diabetes from holding positions as mechanics," and rejected the employer's argument that information relating to the charging employee was the only relevant information. 2006 WL 3712941, at *1, 3. As the First Circuit observed in *EEOC v. Astra U.S.A., Inc.,*

> [T]he charge serves as a jurisdictional springboard enabling the Commission to investigate whether the employer is engaged in any discriminatory practices. So viewed, the charge is capable of supporting an EEOC investigation into both the discrimination described in the charge itself and into the surrounding circumstances (including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation).

94 F.3d 738, 746 (1st Cir.1996) (citation and internal quotation marks omitted); *see also EEOC v. Gen. Elec. Co.,* 532 F.2d 359, 365 (4th Cir.1976) ("If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation.").

Schwan's contends that *EEOC v. Southern Farm Bureau Casualty Insurance Co.,* No. 00–2153, 2000 WL 1610617 (E.D.La. Oct. 26, 2000), supports its argument that the EEOC here has failed to demonstrate "a link between the issues alleged in a charge and the EEOC's ability to obtain judicial subpoena enforcement." (Resp't's Objections at 11, Docket No. 18.) Schwan's argues that here, as in *Southern Farm,* "the investigation took a radical turn from the charge's specific allegations." (*Id.*)

The Court finds that the particular circumstances of *Southern Farm* are not evident here. In *Southern Farm,* the Eastern District of Louisiana denied the EEOC's application for an order to show cause, concluding that the gender-related information the EEOC sought was not relevant to the charge, which alleged that the employer had rejected the charging party for a position because he is an African American. 2000 WL 1610617, at *1, 3. The court observed that the EEOC had not advanced any "argument that the gender information is relevant to [the charging party's] charge of racism." *Id.* at *3. The court concluded that the EEOC's interpretation of relevancy, which would allow "a single charge filed against an employer [to] serve as a veritable key, opening the door into any matter that EEOC saw fit to investigate, regardless of the allegations in the original charge," would "render Congress's express intent ... to limit EEOC's investigative authority nugatory." *Id.* at *3–4.

Here, by contrast, the original charge alleges that Milliren faced retaliation and sex-based discrimination during her participation in the GMDP, when she was training to become a General Manager. The EEOC seeks a gender breakdown of the General Managers Schwan's currently employs, and a gender breakdown of all individuals who successfully completed the GMDP. Unlike the EEOC's position in

*Southern Farm,* here the EEOC argues that matters pertaining to the information requested in the February 2009 Subpoena are " 'like and related' to the acts specified in the charge." (EEOC Resp. at 8 n. 6, Docket No. 26.) Information that Schwan's employs very few females as General Managers, or that very few females successfully complete the GMDP, may, in conjunction with other evidence, support a reasonable cause finding that Schwan's discriminated against Milliren on account of sex while she participated in the GMDP, or may be relevant to "like or related" allegations of sex-based discrimination. The EEOC also seeks information about how Schwan's selects individuals to participate in the GMDP. Information suggesting that Schwan's uses discriminatory selection criteria may, in conjunction with other evidence, support a reasonable cause finding of sex discrimination within the GMDP, because there may be a connection between alleged efforts to exclude women from the GMDP in the first instance and alleged sex-based discrimination and retaliation for the few women whom Schwan's selects for the GMDP. Such information may also be relevant to "like or related" allegations of sex-based discrimination in hiring.

In sum, claims of discrimination in the process of selecting individuals to participate in the GMDP and claims of discrimination in the hiring and retention of General Managers are, at a minimum, " 'like or related' to the acts set forth in the [original] charge." *United Parcel Serv.,* 2006 WL 3712941, at *3; *see also EEOC v. Roadway Express,* 261 F.3d 634, 639 (6th Cir.2001) ("[T]he EEOC is entitled to the evidence that it has requested even though this evidence focuses on the existence of patterns of racial discrimination in job classifications or hiring situations other than those that the EEOC's charge specifically targeted. The employer's pattern of action provides context for determining whether discrimination has taken place."); *Tempel Steel,* 814 F.2d at 485 n. 9 ("[T]he requested information regarding the sex and national origin of applicants and newly hired employees is not irrelevant even though Austin's charge alleges only race discrimination.").

■ As the Supreme Court observed in *Shell Oil,* "it is crucial that the [EEOC]'s ability to investigate charges of systemic discrimination not be impaired." 466 U.S. at 69, 104 S.Ct. 1621. The information the EEOC seeks in the February 2009 Subpoena "might cast light on the allegations" Milliren makes in the original charge, *see id.,* and might support claims that are like or related to the acts set forth in that charge. *See United Parcel Serv.,* 2006 WL 3712941, at *3. The Court finds that the February 2009 Subpoena satisfies the broad standard of relevancy that applies during an EEOC investigation.[2]

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** respondent Schwan's

---

**2.** Schwan's argues in passing that "the irrelevant and vague scope of the subpoena makes complying in its entirety overly burdensome." (Resp't's Objections at 12, Docket No. 18.) "The level of undue burden necessary to excuse compliance with a subpoena must be such that compliance would affect the company's normal operating costs and unduly disrupt or hinder normal business operations." *United Parcel Serv.,* 2006 WL 3712941, at *3; *see also EEOC v. Md. Cup Corp.,* 785 F.2d 471, 477 (4th Cir.1986); *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir. 1981). The Court agrees with the Magistrate Judge that Schwan's has "provided this Court with no evidence to support its bald assertion that responding to these requests was too burdensome." (Order, 692 F.Supp.2d at 1087 n. 12.)

Home Service's objections [Docket No. 18] and **ADOPTS** the Magistrate Judge's Order dated March 3, 2010 [Docket No. 15] with the qualifications set forth in Part II.A.3 above. **IT IS HEREBY ORDERED** that:

1. The Equal Employment Opportunity Commission's Application for Order to Show Cause Why a Subpoena Should Not Be Enforced [Docket No. 1] is **GRANTED.** The Court finds that Schwan's Home Service has not shown cause for its failure to comply with the subpoena.

2. Schwan's Home Service is **ORDERED** to comply with Subpoena No. CHMN–A10–012 in its entirety. Schwan's Home Service shall provide the documents and information sought by the subpoena no later than July 21, 2010.

3. The Court's stay of the Magistrate Judge's order of March 8, 2010, [Docket No. 24] is **LIFTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**